[No. 2869.]

John Lutton v. The State.

1. Swindling—indictment—Practice.—Inasmuch as an indictment for swindling by means of a bogus draft failed to allege that the draft was delivered to or accepted by the injured party as the consideration upon which the money was advanced, the motion to quash should have prevailed.

2. Same—Evidence.—A bill of exceptions recites that the defendant was surprised by the evidence of a witness who testified that he had failed to bring an account book, though he had been served with a *subpœna duces tecum*, wherefore the defendant asked for a postponement to obtain the book. *Held*, that the postponement should have been granted.

3. Same.—See a state of case wherein the defendant should have been permitted to show the course of dealing between himself and the alleged injured parties, both before and after the date of the alleged offense, as reflecting upon the intent of the defendant or throwing light upon the question whether or not the creditor was using the criminal law to collect a debt.

APPEAL from the District Court of Bexar.    Tried below before the Hon. G. H. Noonan.

The defendant was indicted at the March term, 1883, of the District Court of Bexar county, charged with the offense of swindling, in that on the thirtieth day of December, 1882, he gave a draft to Baker & Burroughs, on the San Antonio National bank, for one hundred and ninety-two dollars, and on that draft obtained two twenty-dollar currency bills of the value of twenty dollars each, and of the aggregate value of forty dollars, and that said draft was not paid on presentment.

He was convicted, and awarded a term of four years in the penitentiary.

Charles Burroughs was the first witness introduced by the State.    He testified, in substance, that he was a member of the firm of Baker & Burroughs, proprietors of the Stock Exchange saloon, situated in the Hord hotel building, San Antonio, Texas. Several weeks before the date of the alleged offense, the defendant came to the Stock Exchange and represented to the witness that he had a large amount of money on deposit in New York, which was to be sent to him at San Antonio, and that he was expecting it in a few days.    After making these representations he asked of the witness the loan of twenty dollars, which the witness let him have.    Thereafter, from time to time, he borrowed small amounts of money from the witness, giving first one excuse and then another for the non-arrival of his money, until finally the witness refused to advance him any more.

Late on the evening of December 30, 1882, the defendant came to the witness and told him that his money had arrived, and was then on deposit at the San Antonio National bank.    He said that he wanted to settle with the witness, and the two ran up his account, which amounted to one hundred and seventy-one dollars.    He then said that it was after banking hours, and that he wanted a small sum of money for pressing expenses, and proposed to draw a check against the bank in favor of Baker & Burroughs to cover his indebtedness and an advance of twenty-one dollars for which he asked.    The witness hesitated for a moment, but finally, on his assurance that the money was in bank, and that the check would be paid on demand, the witness agreed, advanced him the twenty-one dollars, and received the check in evidence, which reads as follows:

"No. ——                    SAN ANTONIO, TEXAS, Dec. 30, 1882.
"*San Antonio National Bank:*
  " Pay to Baker & Burroughs or order one hundred and ninety-two dollars.   Standard dollars.
  "$192.00.                             JOHN LUTTON."

The witness asserted and reasserted that he would not have advanced the defendant money in the first instance but for his representations that he had money in New York, and was expecting it in San Antonio in a few days.  He would not have advanced him the twenty-one dollars on December 30, 1882, but for his execution of the check in question, and his assurance that he had money on deposit in the San Antonio National bank, and that the check would be paid on presentation.

On December 31, 1882, the witness sent the check to the bank for payment.  To his surprise it was returned with the information that the defendant had no money on deposit with that bank. He then went to see the defendant about it, and he told the witness that it was necessary for Colonel G. W. Breckenridge, the president of the bank, to sign a paper before the money could be reached by him, defendant, and requested witness not to present the check until the next day.  Witness left him and hired a hack and sent the check to Colonel Breckenridge with request for information concerning it.  Breckenridge sent back word that he knew no such man as the defendant, had never seen him, had never had any business transactions for or with him, and that the defendant had never had any money on deposit with the San Antonio National bank.

The witness did not know whether the defendant had money in New York or not.  He told the witness that he had, and the witness believed him.  When witness was served with a subpoena in this case he was told by the officer to bring his books. Another officer afterwards told the witness that he need not take his books to the court house, and the witness did not bring them.  The books show charges against the defendant for money advanced.  Many persons were passing in and out of the saloon while witness and defendant were settling on the evening the check was drawn.  Witness's clerk, Joe Hines, was in the saloon during part of that time, but whether he saw the witness give defendant the twenty-one dollars and receive the check, the witness could not say.

Colonel John Withers, cashier of the San Antonio National

bank, testified, for the State, that on or about December 30, 1882, a check in favor of Baker & Burroughs was presented at the bank for payment. Witness did not pay it because the drawer, John Lutton, had no funds in bank. Witness did not know Lutton, and had never seen him to his knowledge. The bank had never held any money for a party of that name. John Lutton had never had right or authority to draw against the bank named for money.

Joe Hines testified, for the defense, that he was present, as bar keeper for Baker & Burroughs, when the defendant and Burroughs were looking over defendant's account, on December 30, 1882. Witness ran up the account for them. It amounted to one hundred and seventy-one or two dollars. After casting up the account, witness was called off to wait on customers. He saw neither money nor check pass between Burroughs and defendant. They could have been passed without the witness knowing it. Burroughs got the pen and ink and took it to another part of the saloon, while witness was engaged with customers. Witness did not see what he did with the pen and ink. The defendant frequently got money from the house. When Mr. Burroughs tried to get it repaid, the defendant usually replied "My money has not yet come," or "I will get my money in a few days and pay all."

The motion for new trial presented the questions discussed in the opinion of the court.

*A. S. Chevalier,* for the appellant: 1. The court erred in overruling defendant's motion to quash the indictment.

2. The court erred in overruling defendant's verbal motion to postpone or continue the case until he could procure the books of the State's witness Charles Burroughs, who surprised defendant by testifying that he did not bring the books as ordered by subpœna.

When the State's witness Burroughs was put upon the stand and cross-examined by the defense, the defendant asked witness if he brought the books he was summoned to bring, and he said no, that an officer had told him he did not need them. Defendant's counsel afterwards learned that the county attorney had told Burroughs that he did not need the books; to which effect he filed his affidavit. Appellant expected to prove by these books that, first, they were correctly kept; second, that they showed that defendant did not, as charged in the indictment,

obtain two twenty-dollar currency bills on the thirtieth of December, 1882, on the one hundred and ninety-two dollar draft, as alleged, but that said twenty-dollar bills were borrowed at different times anterior to the giving of the draft; that not one cent was obtained from Baker & Burroughs on that draft. That defendant had borrowed from Baker & Burroughs one twenty-dollar bill, on the twelfth of November, 1882. This was admitted on the stand by Burroughs. That he borrowed the other twenty-dollar bill early in December, 1882. That the draft was given on the thirtieth of December, 1882, and not a cent of money was charged on the books against appellant on that day. In a word, appellant had no other means of impeaching the testimony of the State's witness Burroughs, except by his books.

The best evidence of the contents of the books of Baker & Burroughs were the books themselves, and these we used due diligence to obtain. Burroughs swore the books would show that defendant borrowed twenty dollars on November 19, 1882, but would not show that he borrowed the other twenty dollars early in December. This we contend the books will show, and we complain to your honors that the action of the State's witness in going to the county attorney, and asking him if he needed the books, showed plainly that he wished to suppress the evidence of the books.

We complain that the ruling of the court refusing to permit the postponement of the case until we could obtain the books worked a serious injury on the defendant; cut him off from all his evidence which we were sure was in the court room at the time we announced ready; and we respectfully cite the court to *Eldridge* v. *The State*, 12 Texas Court of Appeals, 208. In this case a witness left the court room during the trial, and it was held sufficient ground for new trial. Also see *Cotton* v. *The State*, 4 Texas, 260.

In the case at bar the witness was present in the court room, and the *subpœna duces tecum*, duly served on him, and returned, was lying on the table before the counsel when he announced ready for trial, and not until he had cross-examined the witness Burroughs did he ascertain that the books were not in court. (See Graham & Waterman on Grounds for New Trial, vol. 1, page 168.)

The honorable court will please refer to statement of facts, in which Burroughs states that defendant Lutton came to him wanting to borrow money, claiming that he had funds in New

York, and was expecting a remittance, and that he obtained money from him several times on these statements. Doubtless this may be true, but we ask your honors where is the evidence to show that he had no funds in New York at the time he made these statements? There is no such evidence. Witness Burroughs admits that he does not know whether defendant has money in New York. He says the defendant may have had money in New York at the time.

We contend that defendant obtained money from Baker & Burroughs as a loan, expecting funds from New York to meet it, but being disappointed in getting the funds as expected, and being pressed by Baker & Burroughs, he gave the draft for $192 on the National bank as a settlement of past indebtedness, but that subsequent to or at the time of giving the draft he did not obtain one cent, and therefore there was no case against him, but simply a breach of trust. That we can show this and acquit our client of the charge brought against him by a reversal of this case is what we now contend.

The court erred in refusing to permit the defendant to introduce the *subpœna duces tecum* served on Burroughs, and in consequence of this ruling we were unable to show to the jury how diligently we had endeavored to obtain this evidence for the defendant.

*J. H. Burts,* Assistant Attorney General, for the State.

WHITE, PRESIDING JUDGE. We are of opinion that the motion to quash the indictment should have been sustained, because it is nowhere alleged in the indictment that the check or draft was delivered to or accepted by Baker & Burroughs as the consideration upon which they loaned the money to the appellant. From the manner in which the offense is attempted to be set forth in the indictment, this additional allegation is necessary to make it complete. (See *White* v. *The State,* 3 Texas Ct. App., 605; *Johnson* v. *The State,* 11 Ind., 481; *The State* v. *Orvis,* 13 Ind., 569.)

The indictment should allege all the material facts necessary to be proved to procure a conviction. In *The State* v. *Philbrick,* 31 Maine, 401, an indictment was held insufficient which, whilst it averred that there was a proposed exchange of horses, failed to contain an averment that such exchange was made. (*Commonwealth* v. *Straim,* 10 Metcalf, 521; *Commonwealth* v. *Lan-*

*nan*, 1 Allen, 590.) In *The Commonwealth* v. *Coe*, 115 Massachusetts, it was said, "upon procuring the loan the delivery of the certificate completes the security." (See Whart. Crim. Law, 8 ed., 2 vol., sec. 1215.)

It is unnecessary to discuss the other errors complained of, further than to say that it was manifest error, under the circumstances shown by the bill of exceptions, for the court to refuse a postponement until the witness could bring into court the account, to produce which he had been served with a *subpœna duces tecum*, and which, under misapprehension or by instruction of other parties, he failed to bring with him. It was competent for defendant to show the course of dealing between the parties both before and after the date of the alleged crime, as reflecting upon the intent of defendant or throwing light upon the question whether the creditor was using the criminal law to enforce the collection of a debt. (*The State* v. *Rivers*, 58 Iowa, 102.)

Because the indictment is wholly insufficient to charge the proposed offense, the judgment must be reversed and the prosecution dismissed.

*Reversed and dismissed.*

Opinion delivered June 27, 1883.