# Bradford *v.* The State.

## *Assault with Intent to Ravish.*

1. *Indictment, when sufficient.*—An indictment for an assault with intent to ravish, which follows the form prescribed by the Code, is sufficient.

2. *Same ; power of circuit court over.*—The circuit court has inherent power, without the consent of the prisoner or his counsel, to order the substitution of an indictment, when, after plea to the merits, it has been lost or destroyed during the trial.

*Case distinguished.*—The case of *Gannaway v. The State,* (22 Ala. 772), distinguished from the case at bar.

APPEAL from Circuit Court of Hale.

Tried before Hon. GEORGE H. CRAIG.

The appellant, Nelson Bradford, was indicted for an assault with intent to ravish, in the form prescribed in the Code. The indictment was demurred to on the ground that it failed to show the acts which constituted the assault, or the manner in which it was made. The demurrer was overruled, and defendant excepted. After all the evidence was in, and the solicitor was about to commence his argument, it was discovered that the indictment had been lost during the trial, and since the demurrer and plea of not guilty. Counsel for the defendant consented that "the indictment might be substituted, and the trial proceed under the substitute." The trial then proceeded precisely as though the original indictment had not been lost. The jury found the defendant guilty as charged.

Motion in arrest of judgment was made on the following grounds: "1st, Because the defendant had not been arraigned on the substituted indictment. 2d, Because defendant had had no opportunity to plead to the new indictment. 3d, Because no evidence had been introduced under the new indictment. 4th, Because there had been no jury empanneled, under the substituted indictment. 5th, Because, after the substitution, the trial should have commenced anew. The court overruled the motion, and defendant excepted.

CHAS. E. WALLER, JAMES M. HOBSON and THOMAS R. ROULHAC, for appellant.

JOHN W. A. SANFORD, Attorney General, *contra.*

BRICKELL, C. J.—The indictment follows strictly the

form prescrided by the Code, and its sufficiency cannot be questioned.

Courts of record, independent of express legislation, have power to substitute any of the files or records which may be lost or destroyed. The power is matter of necessity, whether the loss occurs while the cause is *in fieri*, before it has progressed to final judgment, or after such judgment has been rendered, and whether the loss is of the whole record, or of papers which, when it is finally made up, will constitute parts of it.—*McLendon v. Jones*, 8 Ala. 298 ; *Dozier v. Joyce*, 8 Port. 305; *Williams v. Powell*, 9 Port. 433; *Wilkinson v. Branham*, 5 Ala. 608 ; *Talladega Ins. Co. v. Landers*, 43 Ala. 115. In reference to civil cases, the statute now provides, "if an original pleading be lost, or withheld by any person, the court may order a copy to be filed in place of the original."— R. C. § 2672.

In *Gannaway v. State*, 22 Ala. 772, the majority of the court, recognizing this power of the court, in civil cases, denied the power to substitute an indictment lost before arraignment and trial. Since, the statutes provide, that if an indictment is lost, mislaid, or destroyed, the court may, on satisfactory proof thereof, order another indictment to be preferred.—R. C. § 4145. And further provides the time elapsing between the finding of the first and the subsequent indictment, shall not be computed as part of the time limiting the prosecution of the offense.—R. C. § 4147. Neither the decision in Gannaway's case, nor the statute, meets the question now presented—the loss of an indictment, after arraignment and pending the trial of the accused. The accused was arraigned on an indictment, the verity of which was indisputable. The opportunity of inspecting it had been afforded, and availing himself of the opportunity, he tested by demurrer its sufficiency. The demurrer being overruled, the plea of not guilty—he declining to plead—was entered for him before the loss of the indictment. There can be no apprehension that an indictment against him had not been preferred by the grand jury ; or that he was put on his trial to answer the genuine finding of the grand jury. The indictment having been lost after plea, after the jury had been empanneled, and the evidence closed, the result is, the prisoner was entitled to his discharge, if the continuous existence and presence in court of the indictment was essential, and the court could not by substitution supply the loss. It is not one of the cases in which the statute authorizes a *nolle prosequi* to be entered, that a new indictment may be preferred. The accused was in legal jeopardy, having been arraigned and put on trial before a court of competent juris-

diction, and the jury empanneled and sworn. A *nolle prose-qui* then entered, not because of a variance between the indictment and the evidence, nor because of defects in the indictment, which would vitiate a judgment of conviction, would bar a future prosecution.—Cooley's Con. Lim. 326. The consequence is, then, as we have stated, the accused must be discharged or the court must have the power to supply the loss of the indictment. Though this may be the consequence, if the court has not, according to well defined principles, the power to avoid it by a substitution of the indictment, it is far better the accused should escape, whatever may be the degree of his guilt, than that the courts by mere decision should introduce new rules to cure a defect in the law the particular case develops.

Without infringing on the decision in Gannaway's case, or invoking the aid of the statute, as matter of legal principle, jealous of the safety of the accused, and preservation of all the rights the law guarantees to him, we cannot apprehend there is any real difficulty in affirming the power of the court to permit, or, indeed, to compel the substitution of the indictment, under the facts found in the record, with, or without the consent of the accused. The indictment, under our laws, is an indispensable constituent of the record. To answer it, the defendant is arraigned, and to it his plea is the answer, whether he voluntarily interposes it, or the court, when he stands mute, intervenes for him. Before he can be arraigned, and put on his trial, the record must disclose an indictment—that it is the finding of a grand jury, organized in the mode prescribed by law, and by them returned into, and accepted by the court. Under the statute, the foreman of the grand jury is required to endorse on the indictment "a true bill," to sign the endorsement, (R. C. § 4104), and to present it to the court, in the presence of at least eleven other jurors. No entry of the finding is made on the minutes, but in lieu of such entry, and as a mode of authenticating it, and its reception by the court, equivalent to an entry on the minutes, the clerk is required to endorse the indictment, "filed," date, and sign it.—R. C. § 4148. Certainly until the plea of the defendant, the indictment may be said to be *in fieri*, and its verity may be disputed in a proper mode.—*State v. Greenwood*, 5 Port. 474; *State v. Matthews*, 9 Port. 370. When pleaded to, either by the plea of *not guilty*, or by general demurrer, because of its insufficiency in law, its genuineness as a record stands admitted.—*State v. Clarkson*, 3 Ala. 378. Neither plea would be proper, or authorize the rendition of judgment, unless interposed to a genuine indictment. There may be sufficient reasons, consequently,

for the rule announced in Gannaway's case, which would have no application to this case. It may be, the defendant should not be arraigned, or put on trial except on the original finding of the grand jury, because of that he should have inspection, and because of the danger, however remote, that he might be called to answer an accusation the grand jury had never presented; if, when it has been lost, its substitution on secondary proof of its contents was permitted. Such must be accepted now as the law, and the statute, authorizing the preferring a new indictment, is in affirmance of the reasoning on which Gannaway's case rests. It does not authorize substitution—it authorizes only preferring a new indictment, excluding from the bar of the statute of limitations, the time elapsing after the finding of the first, and the presentment of the new. The loss contemplated, must have occurred before, and not during trial. The purpose is to put the defendant on trial, only on the original finding of the grand jury—that which carries with it, by its endorsements, the satutory evidence of verity. On that finding the accused was arraigned—the genuineness of the indictment was admitted by his demurrer, and recognized by the court in the judgment on the demurrer, and in interposing for the defendant the plea of not guilty. Of the existence and verity of the indictment, there was no controversy. Its loss occurred during the progress of the trial, and as is the most reasonable presumption from the record, after the jury had been empanneled and sworn. It was not discovered until the evidence had been introduced, and the solicitor was opening the argument to the jury. There is no doubt that the indictment substituted is an exact copy of the original. The grounds of demurrer to the original were specially assigned, and are in every respect applicable to the copy substituted. These grounds are resolvable into one—that the acts constituting the assault are not stated. They are not stated in the substituted indictment, and the statute dispenses with their statement, requiring only the statement of the fact of the assault, the name of the female, and the criminal intent. Of the existence of the original indictment, and of its verity, there could be and was no controversy. The substitution was the introduction into the records, of matter previously recognized by the court, and admitted by the defendant—of matter, the verity of which had previously passed beyond controversy. It was the duty of the court to make the record speak the truth—to conform it to the facts as they existed when the defendant was arraigned, pleaded, and was put on his trial; thereby no right of the accused is imperiled—he is not subjected to any

other jeopardy than that in which he was placed when put on his trial. That the grand jury had made a presentment against him; that it was returned into court; that he had admitted its verity, was already judicially ascertained, and apparent of record. His clear, constitutional right was to a verdict from the jury empanneled and sworn, which he had accepted as his triers. The loss or destruction of the indictment, could not impair or take away this right. The State had a corresponding right, that the trial should progress, and a judgment of conviction or acquittal rendered, finally determining the prosecution. Such rights cannot be impaired, or destroyed by the accidental loss, or the willful abstraction or destruction of papers pending the trial.— *Mounts v. State*, 14 Ohio, 295. The substitution of such papers on satisfactory proof, by the court, is the only mode of supplying the loss, and lies within the inherent power of the court. Otherwise, the progress of a cause could be arrested —the escape of the criminal could be secured by the felonious abstraction, or the accidental loss of an indictment. In Gannaway's case, and in the case provided for by the statute, the loss may be supplied by preferring a new indictment, and that, when it can be pursued, is the more conservative practice, if the statute had not directed it. But when, pending the trial, the indictment is lost or destroyed, the defendant being in jeopardy, the result is his discharge, or it must rest in the power of the court to supply the loss by substitution. Rights neither of the State, nor of individuals, are lost by the loss of records or the constituents of a record, in the custody of courts of public officers. We are of the opinion the court had power, without the consent of the accused, or of his counsel, to order the substitution, and it appearing the power was properly exercised, the judgment is affirmed.