THE STATE v. SIMPSON, *Appellant.*

**Power to Supply Lost Indictment**: STATUTES. No power to supply a lost indictment is given by sections 14 and 15, page 1137, Wag. Stat. These sections prescribe the mode of supplying lost and destroyed records and papers in civil cases only. But the power exists, independent of any statute, and authorizes the court to allow a paper, proved to be a copy, to be filed as and for the indictment, provided it appears, either from the record or from the testimony of witnesses, that the indictment was returned into court and filed. Courts should, however, be careful in exercising this power.

*Appeal from Benton Circuit Court.*—HON. WM. S. SHIRK, Judge.

*Lay & Belch* and *James H. Lay* for appellant.

The doctrine sought to be established here is simply this: That any citizen may be tried for any offense, no matter how heinous it may be, upon the affidavit of an ex-prosecuting attorney that the paper on which he is tried is, in substance, a copy of an indictment found against him by the grand jury. This affidavit has not even the sanction of an official position or oath. The affidavit, too, is made by a person in nowise responsible for its falsity if untrue, and of a person who is not, by law, the custodian of the indictment about which he swears. It may be that the case at bar, in itself, will not be considered of very great importance; but the principle here involved lies at the foundation of the grand jury system, and may apply as well to a case of murder in the first degree. If the system itself, although sanctioned by the ablest judges and wisest law-makers who have ever lived, is not up to the supposed advancement of the day and generation, let it be abolished by all means. But to preserve the form simply, without the substance, is little better than a farce.

*J. L. Smith*, Attorney-General, for the State.

If parties who stand indicted have but to get rid of the paper on which the accusation is written in order to forever silence the prosecution, or if a like result is to follow from an accidental loss or destruction thereof, it is well that it should be known. It would be a very expedient mode of facilitating criminal practice in the courts. The immense amount of costs incurred for witnesses, jurors, officers, &c., might as well be saved. Few cases would be called in which the indictment would not be lost or destroyed.

HENRY, J.—At a regular term of the Benton circuit court in August, 1874, the defendant was indicted for laboring on Sunday. At the August term, 1875, of said court, the indictment having been lost, the court permitted

the State to supply it by a copy sworn to be a literal copy, by Dee Rees, who was prosecuting attorney when the indictment was prepared. The question is, Can a lost indictment be so supplied? The State relies upon Wag. Stat., section 14, page 1137, which is as follows: " When any record of judgments or executions, or any orders or allowances of any probate court or county court, or any inventory, sale-bill or appraisement, or other document or paper filed, or, being in any court of record or justice's court, shall have been mutilated, lost or destroyed, stolen or carried away, any person interested in any such record or paper, or his or her agent or attorney, may make out a statement in writing, verified by affidavit, setting out, as near as may be, the full contents of said lost, mutilated or destroyed record or papers, and file the same in the clerk's office or office of the justice of the peace wherein said lost, mutilated or destroyed record belonged." The 15th section provides that when any such statement shall be filed, &c., the clerk or justice of the peace, if a judgment or execution is intended to be supplied, shall issue a summons, to be served in like manner and time as in ordinary suits at law, and upon its return the defendant may file his answer as in ordinary cases at law, and the cause shall be tried at the term of the court at which answer is filed, &c., and provides for a judgment. If the statement is intended to reinstate an inventory, sale-bill or order of any probate or county court, no summons shall be issued, but the party seeking to establish the same shall cause a notice in writing, setting forth the substance of said papers or orders, to be served upon the administrator or executor of the estate affected by said order, &c. We do not think that these sections have any reference to criminal proceedings. The second section, prescribing the proceedings to be had on the statement filed, clearly relates to civil proceedings; and the first section, requiring an affidavit of loss and contents, and that the contents may be stated " as near as may be," certainly was not intended as sufficient to

supply an indictment. The second section carefully guards the interests of parties to civil suits by requiring notice, but makes no provision of a like character in favor of a defendant who may be in·:icted for the highest crime known to the law. There is nothing except the general language, "or other document or paper filed, or being in any court of record or justice's court," to warrant a construction that would embrace a lost indictment, and those words are clearly restricted in their meaning by the context and the mode of proceeding prescribed in the succeeding section.

It is well settled that, independent of any statute, a lost, mutilated or destroyed record may be supplied. The contents of a lost or destroyed record may be established by secondary evidence in a suit between individuals, and there is no reason for confining this to civil proceedings. Why should not the same doctrine apply to records in a criminal case? The record is in the same custody and made by the same authority, and is of no less solemn a character in the one case than the other. This would probably be conceded, but it is said that an indictment stands upon a different ground, being a record made, not by the court, but by the grand jury, and cases in Alabama, Virginia and Tennessee seem to recognize that distinction. We are.not impressed with its soundness. The court does not frame the plaintiff's petition or .the defendant's answer, yet, when they are filed, they become records of the court, and, if lost or destroyed, may be supplied. In *Harrison v. The State*, 10 Yerg. 542, the court observed "that a court has the power to alter and supply from its memory alone any order, judgment or decree pronounced by it at the same term, and this manifestly because the term constitutes but one day in the estimation of the law, and everything is in *fieri* that is not unalterably fixed and determined by its adjournment. This principle, doubtless, applies with more force to things which have emanated from the court itself, because the judge may not recollect

what he has himself directed to be done, and find it impossible to remember what has been done by others. This is peculiarly applicable to bills of indictment which are drawn by the attorney-general without consultation with the court, and acted upon by the grand jury, not under the immediate inspection of the court until the offender is arraigned for trial, and then in such a cursory way as to render it difficult for him to supply their loss from memory. No judge would rashly undertake so to do." We submit that it is not the question of amending a record to make it perfect, but to supply a record that is lost or destroyed. After the court adjourns, there can be no amendment of the record except by the record. The record made speaks for itself, and, if destroyed, may be supplied—not amended—so that it shall still speak as before. The argument of the court in the Tennessee cases, and those holding the same doctrine with respect to lost indictments, would apply with equal force against supplying lost petitions or answers. A judge has as much to do with making an indictment as with making petitions and answers, and it would be equally as rash for a judge to undertake, from his memory, to supply the one as the other; and yet the propriety of the practice of supplying lost pleadings in a civil suit has not been questioned. As was said in *Harrison v. The State, supra*: "The power of courts to amend and supply their records when they have been left imperfect by the misprision of the clerk, or have been destroyed either by accident or design, cannot be disputed; its existence is essential to a correct administration of justice." But, we suggest, if lost or destroyed records can only be supplied on the recollection of the judge who presided when the record was made, if he cannot (and who could?) remember all the proceedings in causes tried before him, or if he be dead, are the parties whose rights depend upon the record so made to be deprived of their rights?

It is, we repeat, not a question of amendment; and, as to a record already made and concluded by the adjourn-

ment of the court, any other witness is as competent as the judge who presided at a trial to prove what record was made on that trial. When the indictment is delivered to the court and filed by the clerk it becomes a record of the court. It is contended that neither the record nor any other evidence shows that any such indictment was ever returned into court. Mr. Rees states, in his affidavit, that the indictment was found by the grand jury and indorsed as a true bill by Wm. F. Hughes, who, was foreman, but does not state that it was filed as required by Wag. Stat., sec. 21, page 1084. It does not become a record until filed, and that fact should appear, either by the record or by the testimony of witnesses. It is the duty of the clerk not only to indorse its filing upon the indictment, but to record the fact. This he did not; at least the record does not show that the indictment was filed, nor does the copy sworn to by Mr. Rees contain an indorsement of the filing. We hold that the court may supply a lost indictment, but it can only be done when there is evidence to show that it was a record of the court. We think, also, that courts should be careful in exercising this power. I remember one case which will illustrate the danger of inconsiderately supplying records : A criminal case was called for t...l in the Putnam circuit court. The indictment could not be found. The prosecuting attorney moved for leave to supply, and made an affidavit that a copy furnished by him was a true copy of the original indictment. The court was about to permit it to be filed, when the attorney who had been retained by the accused produced a certified copy which he had taken the precaution to procure from the clerk; it differed very materially from the prosecuting attorney's copy. It was substituted for the original, and then a motion to quash was sustained, which, as to the prosecuting attorney's copy, would have been overruled. I have no doubt the prosecuting attorney was honestly mistaken in that case. His memory was at fault, and but for the watchfulness of Mr. H. D. Marshal, the

The State v. Simpson.

attorney for the accused, the defendant would have been tried upon an indictment which the grand jury did not find. The case cited by the Attorney-General from Texas (17 Tex. 232) was decided upon a statute of that State. *Millar v. The State*, 2 Kas. 174, and Bish. Crim. Pro., sec. 1215, hold that a lost indictment may be supplied by evidence of its contents. In *Ganaway v. The State*, 22 Ala. 775, it was said by Phelan, J., who delivered the opinion of the court: "It may be granted that a court has, and ought to have, power to supply copies or duplicates of all parts of the record, or proceedings which emanated from it or under its authority in the first instance, because the power which could make the original ought to be, at all times, able to supply a copy if that be lost or destroyed. This power will cover every part of a civil proceeding—from the summons, or writ, to the judgment, or execution. But this power does not embrace an indictment. The court has no power to make an indictment or to direct one to be made." Gibbons and Goldthwaite, JJ., dissented from opinion of the majority. Because the grand jury alone can prefer an indictment, and that is the ground upon which that opinion was based, it does not follow that, after it is preferred and made a record of the court, it may not be supplied. The grand jury had found the indictment, but the record had been lost or destroyed; but supplying the record is not finding the indictment. It seems to us that the cases to which we have referred confound the two proceedings of amending and supplying records. We reverse this judgment and remand the cause on the ground that there was no evidence that the indictment in question was ever made a record of the court. All concur.

REVERSED.