STATE ex rel. NULL, State's Attorney, v. CIRCUIT COURT IN AND FOR BEADLE COUNTY et al.

Since indictments, on being filed with the clerk, become public records, as provided by Rev. Code Cr. Proc. § 217, it is the duty of the court in which they are filed, on a suggestion that they have been lost or stolen, to cause their return to their proper custodian, or, failing this, to authenticate and substitute copies prepared from the best proof of the contents of the originals obtainable.

. Where on an application for an order supplying lost or stolen indictments, carbon copies.were obtained from the state's attorney and from defendant's attorney, from which copies submitted for authentication were made, and both the state's attorney and the clerk, who read the originals on the arraignment and who made the certified copies for the defendant, testified that they believed the copies produced to be true and correct, which was not denied, the proof of such copies was sufficient to require their certification.

Where the circuit court refused to certify certain copies of lost or stolen indictments on sufficient proof of their authenticity, such duty might be properly compelled by the Supreme Court by mandamus.

Fuller, P. J., dissenting in part.

(Opinion filed, Oct. 24, 1905.)

Original application for mandamus by the state, on relation of T. H. Null, acting state's attorney of Beadle county, to compel the

circuit court of such county, presided over by Hon. Loring E. Gaffy, judge, to establish and authenticate two copies of certain lost or stolen indictments.   Writ allowed.

Philo Hall, Atty. Gen., and T. H. Null, Acting State's Attorney, for plaintiff.   A. W. Wilmarth, Henry C. Hinckley, and H. S. Mouser, for defendant.

HANEY, J.   This is an original application upon notice for a writ of mandamus commanding the cicruit court within and for Beadle county and Hon. Loring E. Gaffy, the presiding judge thereof, to establish and authenticate, by such evidence as the case may afford, true copies of certain lost or stolen indictments, to order such copies filed in lieu of the originals, and to proceed upon such copies as if they were originals.   From an agreed statement of facts it appears "that on the 14th day of September, 1905, the state of South Dakota ,by Thomas H. Null, acting state's attorney for Beadle county, suggested the loss of purported indictments Nos. 15, 16, 17, 18, and 19, alleged to have been returned by the grand jury of Beadle county against the defendant Charles A. Kelley at the March, 1905, term of said court, and moved upon the affidavits of Asher F. Pay and Thomas H. Null to substitute for said lost indictments copies attached to the affidavits of said Asher F. Pay, being Exhibits D, E, F, G, and H, which are set out in the application for the writ of mandamus in this case, * * * in lieu of said original indictments.   To which motion the defendant entered the following objection : 'At this time the defendant objects to the motion made by the state's attorney to substitute the copies of indictments Exhibits D, E, F, G, and H, for the reason that there is no authority under our Constitution or statutory laws for the substitution of any copy of an original indictment, and that there is no authority under the common law for such a proceeding ; and we object on the further ground, for the reason that the exhibits offered as copies are not certified or proved to be copies of the original indictments returned by the grand jury against the defendant, and are only shown to be papers delivered by one of the attorneys for the defendant to the clerk of this court on the request that he desired them for the purpose of copying ; that the exhibits are copies of papers which are

not identified in any way as being copies of the original indictments, or taken from the original indictments, or even taken from certified copies of the original indictments, and there is nothing before the court to identify them as copies of the original indictments, if the court has the power to substitute copies of any indictment; also, that the showing made by the prosecution is not sufficient to sustain the motion that he makes to substitute copies.' "

The reasons assigned by the learned circuit court for its refusal to grant the state's application are thus stated in its return or answer in this proceeding: "In this action it appears that the grand jury for the county of Beadle in the spring of 1905 returned several indictments into court against the defendant, which indictments were filed, and whereupon the defendant filed an affidavit of prejudice against the presiding judge on the several indictments returned; that he was by said judge required to plead; that he demurred to the indictments, which demurrers were overruled by the court, and the defendant entered to each of the indictments a plea of not guilty; that the causes went for trial to the next regular term of the circuit court for that county; that prior to the next term, and after the filing, the indictments were lost or stolen from the records, and they cannot be found; and this is a motion on the part of the state to allow the filing of copies of the indictments and to restore the record. The defendant, appearing personally and by counsel, objects to the filing of copies for several reasons, among others that the grand jury which found the indictments was not legally constituted; second, that the papers offered to be filed by the state are not copies or proven to be copies; third, that there is no statute allowing the restoration of a lost indictment in this state. These are the main objections, as the court understands, made by the defendant to the filing of these proposed copies. In regard to the first objection, that the grand jury was not legally constituted, the court finds absolutely no reason for this contention. In regard to the objection that there is no statute under which these proceedings could be had, while it is not necessary to decide the question in this case, the court is of the opinion that, after an indictment has become a record of the court and is abstracted or lost, the court has the in-

herent power to restore the record by a proven and certified copy, if such can be obtained. The question in this case is as to the nature of the so-called copies offered by the state in lieu of the lost or abstracted indictments. The court has no power to make an indictment. Granted that the court has the power to order a copy substituted, should it not be such a copy and of such a character that it would preclude any reasonable doubt as to its being a true copy of the criminal indictment? In this case the papers presented are true carbon copies of the body of two indictments entitled in this case. There are no signatures of the officers or names of witnesses. Together with these are presented full copies, or papers which on their face are full copies, of indictments entitled herein. The affidavits show that they were compared from copies of indictments borrowed by the clerk of court from one of the attorneys for the defendant. There is no affidavit that these are true copies of the indictments lost or abstracted. There are affidavits from the state's attorney and clerk of court which state that they believe them to be true copies. There is no affidavit of the person making the copy of which these presented papers are copies as to their being true, and the court is asked ,from a search of the records and the recollection of the clerk and state's attorney, and perhaps his own recollection, to formulate, with the help of these tendered copies, an indictment or indictments upon which these causes should be tried. I do not believe the court has power so to do. Whether these indictments were interlined or not could not be ascertained. What were the names of the witnesses would be a matter of proof, as would, in fact, the matter of the contents of the indictments; and in fact the court in this proceeding is asked to practically, from whatever can be ascertained, make new indictments, and, while it is to be regretted that criminal actions can be disposed of in this manner, I do not believe the law would justify the granting of this request, and the motion is denied."

Every court must have inherent power to protect and preserve its own records; otherwise, it could not perform the functions for which it is created. The indictments in question became public records when filed with the clerk. Rev. Code Cr. Proc. § 217. The

government, the defendant, and every inhabitant of the state was concerned in their preservation. When it was suggested that they had been lost or stolen, it was the duty of the court on its own motion, if its inherent power had not been otherwise invoked, to have caused the return of the original documents to their proper custodian, or, failing in this, to have ascertained with reasonable certainty the contents of each, and ordered the filing of copies corresponding in every material respect with the originals. Such we believe to be the power and duty of every court existing by virtue of organic law, with respect to all its records, whether civil or criminal, and that it cannot be deprived of such power or excused from performing such duty by any legislative enactment. It is enough, however, for the purposes of this proceeding, to hold that such power and duty existed independently of statutory authority, where, as in this instance, the accused was furnished with certified copies and entered his plea of not guilty before the indictments were lost or stolen, and in so holding we have the support of abundant authority. State v. Rivers, 58 Iowa, 102, 12 N. W. 117; State v. Stevisiger, 61 Iowa, 623, 16 N. W. 746; State v. Gardner, 13 Lea, 134; State v. Simpson, 67 Mo. 647. In disposing of the state's application, the circuit court was not called upon to exercise discretion in granting or refusing a requested favor, as where a party asks to amend a pleading. It was not called upon to consider the sufficiency of the original indictments or any questions relating to prior rulings concerning the same. It having been conclusively shown that five indictments, each properly signed, indorsed, presented, and filed, had been lost or stolen, there was nothing for it to do except to ascertain the material contents of the lost papers. If the showing made by the state was deemed insufficient, the court should, on its own motion, have required the production of the certified copies previously delivered to the defendant, or the production of any other available evidence. But the showing was amply sufficient. It was based on documentary evidence which was as cold and lifeless in the court below as it is in this. There was no oral evidence to weigh, nor was the credibility of any witness affected by his appearance or demeanor upon the witness stand. The learned circuit

court was in no better position to determine the facts than is this court, and all the facts necessary to a determination of the application were undisputed.

The acting state's attorney stated in his affidavit "that affiant prepared the said indictments for the grand jury; that the same were prepared by dictation to a stenographer, and the same were entirely typewritten instruments, except the signatures, indorsements, and names of witnesses; that when the stenographer wrote the said indictments upon the typewriter he made carbon copies thereof, which carbon copies were preserved and retained by this affiant; that when the clerk of this court informed affiant of the loss of the original indictments and called upon affiant for copies thereof, affiant delivered to the clerk of this court the carbon copies so made from the original indictments and preserved by this affiant, and that the carbon copies annexed to the affidavit of the clerk of this court are the carbon copies delivered by this affiant to the said clerk of this court; that this affiant has not seen the original indictments since the adjournment of the March, 1905, term of this court; that the last that this affiant knew of said indictments they were in the hands of the clerk of this court; that affiant does not now know where said indictments are, but believes them to be lost or abstracted from the office of the clerk; that affiant believes the carbon copies referred to to be true copies of the original indictments, save and except the signatures and indorsements and names of witnesses; that affiant has examined the copies of the indictments made by the clerk of this court from the copies supplied by Mr. Wilmarth, containing the signatures, indorsements, and names of witnesses, and affiant believes them to be true and full copies of the original indictments herein."

The clerk stated in his affidavit that "this affiant made a true copy of each of said indictments, and certified the same as being true copies of said indictments, and delivered said copies so certified to the defendant; * * * that, when affiant found that said files and indictments were missing from his office and could not be found, affiant called upon T. H. Null, state's attorney of Beadle county, for copies of said indictments; that the said T. H. Null then delivered

to affiant carbon copies attached to this affidavit; that the carbon copies so delivered by said state's attorney to affiant did not contain any signatures or indorsements of names of witnesses; that the said carbon copies so delivered by said T. H. Null to this affiant are hereto annexed and made a part of this affidavit, marked Exhibits A, B, and C; that thereafter this affiant called upon A. W. Wilmarth, one of the attorneys for the defendant, and asked him for the original indictments; that thereupon the said A. W. Wilmarth delivered to this affiant copies of papers from which the copies attached were made, and affiant thereupon made from the said papers furnished by the said A. W. Wilmarth true copies thereof, containing the signatures and indorsements and names of witnesses, which said copies are hereto annexed and made a part of this affidavit (Exhibits D, E, F, G, and H); that the defendant, Charles A. Kelley, came to the office of this affiant to inquire about the loss of said indictments; that the said defendant then informed this affiant that he had at his office the original certified copies of said indictments, and that he would loan the same to this affiant for the purpose of making copies, but that thereafter this affiant called at the office of said defendant for the purpose of procuring said certified copies, at which time the defendant refused to deliver the same to this affiant, or allow this affiant to copy the same, without first consulting with his counsel; that upon the arraignment of the defendant this affiant, at the direction of the court, read each of said indictments to the defendant; that this affiant has examined the carbon copies supplied to him by the state's attorney, as well as the copies supplied to him by Mr. A. W. Wilmarth; that affiant fully believes, from his knowledge of the original indictments, from reading them to the defendant upon arraignment and from the making of the said certified copies, that the copies hereto annexed are true and correct copies of the original indictments returned and filed in this court; that the original indictments have been lost or abstracted from the office of this affiant, and this affiant is now unable to produce or account for same."

The only evidence offered in opposition to that of the state was the following affidavits:

"A. W. Wilmarth, being duly sworn according to law, do depose and say: That I am one of the attorneys for the defendant, Charles A. Kelley, in the cases of the state of South Dakota against him, as appears from indictments 15, 16, 17, 18, and 19, returned at the March, 1905, term of this court. That after the said indictments were returned to court, and before the defendant demurred to any of them, I saw and examined all said indictments; that I only saw the said indictments this once; that some of said indictments had written interlineations in them. That some time during the month of August, 1905, Asher F. Pay, clerk of courts of Beadle county, came to my office and asked me for these indictments. I said to the clerk that 'I did not have them and had never had them. The clerk said they were not in the office, and he thought I might have them; that probably some other attorneys had them. I then went to my file case and took out the files, inclosing all papers pertaining to these indictments, and said to him that these copies which I then handed him were the only papers I had pertaining to said indictments. He asked me if I would let him take them and make copies; and I said, 'Yes,' and he took them. I do not know whether the papers that I let him have were copies of the original indictments or copies of any certified copies of said indictments, as I never compared them or saw them compared, and do not know whether or not they were ever compared."

"I, C. A. Kelley, being duly sworn according to law, do depose and say: That I am the defendant in the cases of the state of South Dakota v. C. A. Kelley, as appears in indictments numbers 15, 16, 17, 18, and 19, returned at the March, 1905, term of this court. That I have never had any of the said indictments in my possession, and I never saw them except in the hands of the clerk as he read them in open court, and do not know anything about them since I saw them in his hands. That I was informed that said indictments were missing from the files of the clerk of courts, and to ascertain if such was the fact I went to the clerk's office and inquired of him personally if the indictments were missing, and was informed that they were. That the clerk then said that he had copies. I asked

him to show them to me. He brought out purported copies, two of each indictment, one set of which he said he received from Mr. Null, and the other set he said he received from Mr. Wilmarth. That the clerk at that time said that he had made only one certified copy of these indictments, and that he gave those copies to me. I said to him, 'Yes, you gave me certified copies.' He then asked me if I would let him have my certified copies. To this question I made no reply. That subsequently the clerk of courts called at my office for these certified copies, and I said to him that I wished to consult my attorneys before doing anything in the matter. That I never at any time have refused nor consented to turn over to the clerk of courts the certified copies which he delivered to me. That I am unable to find said copies and cannot produce them. That in the certified copies which were delivered to me there were written interlineations in the body of the indictments at the time they were delivered to me by the clerk of court."

Exhibit A, one of the carbon copies produced by the acting state's attorney, was identically the same as Exhibit E produced by the clerk, except as to two wholly immaterial words and that the blanks left on the former for the names of the foreman, acting state's attorney, and witnesses sworn and examined before the grand jury were not filled in. The same is true of the carbon copy, Exhibit C, and the clerk's copy, Exhibit F. The carbon copy B and the clerk's copy H were identically the same, except that the blanks left on the former for the names of the foreman, acting state's attorney, and witnesses were not filled in. It is difficult to imagine how any, fact could be more satisfactorily established than that Exhibits E, F, and H are true copies of three of the lost indictments. Carbon copies of the original typewritten indictments are produced which correspond with copies in the possession of the defendant's attorney, except in the respect stated. As to the typewritten portions of the originals, the only portions which could not be easily supplied by oral testimony, the carbon copies are infinitely more reliable than certified copies, because it is a physical impossibility for them to differ from the originals. The defendant was furnished with certified copies. His attorney is found with copies which cor-

respond with carbon copies of the originals and with the records of the court. The state's attorney who drew the originals, the clerk who read them on the arraignment, and who made certified copies of them for the defendant, both swear that they believed the copies produced by the clerk to be true and correct. No one denies it. How could any fact be more satisfactorily proven? With these three copies and the conceded facts there was no doubt as to the contents of three of the original indictments. Exhibits D and G will be considered separately. The former, as we understand the record in this proceeding, does not bear the names of the acting state's attorney, foreman, or witnesses sworn and examined before the grand jury. It was therefore incomplete, and did not in itself furnish sufficient data from which to prepare a copy of the original. But these omissions could and should have been supplied by other evidence, oral if necessary. Exhibit G, which purported to be an indictment "for having forged deed in possession," was signed by the foreman, acting state's attorney, and witnesses. It was a true copy of a paper found in possession of the defendant's attorney, in connection with other papers conclusively proven to be true copies of original indictments. It bore these indorsements, as did all of the copies found in Mr. Wilmarth's office: "Clerk of the court's certificate attached." "Proof read. A. G. P." If the paper found in Mr. Wilmarth's office was not a copy of one of the indictments against his client, why was it preserved among the papers relating to his client's cases? Would it not be absurd to assume that such a purported copy would ever have existed in the absence of an original? In view of the clerk's belief, founded upon his having read the original on arraignment and having made a certified copy, in view of the acting state's attorney's belief, founded upon his having drawn the original, and in view of all the undisputed facts and circumstances disclosed by this proceeding, we have no hesitancy whatever in concluding that Exhibit G was a substantially true copy of the original indictment— that it was precisely what it purported to be. Moreover, the only reasonable inference arising from all the evidence is that the defendant and his attorneys have the certified copies delivered to the former by the clerk under their control, if not in their possession,

and neither one denies the correctness of these exhibits. This is not a criminal proceding. The defendant is not on trial for any public offense at this time. But, if it were criminal in its nature, the defendant having voluntarily become a witness upon his own behalf, his testimony would be subject to the same consideration as that of any other witness, and under all the circumstances here disclosed his affidavit and that of his attorney amount to and should be regarded as virtual admissions that the Exhibits D, E, F, G, and H are true copies of tne certified copies delivered to the defendant, with the exception as to Exhibit D, heretofore stated. So upon all the evidence we conclude that it was clearly and convincingly established that Exhibits E, F, G, and H are true copies of the indictments of which they purport to be copies, and that Exhibit D is a true copy of the body of the indictment of which it purports to be a copy. It was therefore the duty of the circuit court upon the facts so established to prepare copies of indictments in accordance with Exhibits E, F, G, and H, with proper indorsements, and to file the same in lieu of the originals, to ascertain the names of the foreman, acting state's attorney, and witnesses sworn and examined before the grand jury, add such names and the proper indorsements to Exhibit D, and make a copy of the paper thus completed and file the same in lieu of the original indictment, and upon the record thus restored to proceed with the several actions as if none of the indictments had been lost or stolen.

The lower court having failed to perform its duty as indicated, this court, because of the peculiar circumstances disclosed in this proceeding, deems the case one in which it should exercise its constitutional power of control over all inferior courts, and issue its mandate commanding the circuit court to perform such duty. Vine v. Jones, 13 S. D. 54, 82 N. W. 82; City of Huron v. Campbell, 3 S. D. 309, 53 N. W. 182. All the judges concur, except FULLER, P. J., who thinks that the circuit court erred in denying the state's application, but that its action should not be reviewed in this proceeding.