# CHARLESTON

## STATE *v.* STRAYER.

Submitted January 30, 1906.   Decided February 6, 1906.

1. INDICTMENT---*Misnomer---Amendment.*
   If a misnomer in an indictment for a felony appear before, or in the course of, the trial thereon, the indictment may be amended by inserting therein, under an order of the court, the true name of the accused.   (p. 677.)

2. INDICTMENT---*Misnomer---Motion to Quash.*
   An indictment should not be quashed because of a misnomer therein.   (p. 678.)

3. INDICTMENT---*Lost Indictment---Substitution of Copy.*
   If an indictment for a felony be stolen, lost or destroyed, after a trial thereon, and the rendition of a verdict of guilty, the trial court, under its inherent common law powers, may cause to be filed in the record of the case a copy thereof, as a substitute therefor, to subserve any purpose for which the indictment may be needed in the further progress of the case.   (p. 678.)

4. INDICTMENT---*Substitution of Copy---Presumption.*
   In the absence of an objection to the substitution of such copy, on the ground that it is not a true or correct copy, its accuracy and correctness will be presumed.   (p. 679.)

5. BILL OF EXCEPTIONS---*Appeal.*
   A bill of exceptions, made up and signed more than thirty days after the expiration of the term of the court at which final judgment in the case was rendered, is no part of the record and cannot be considered.   (p. 677.)

6. BILL OF EXCEPTIONS--- *Transcription of Evidence---Record.*
   If it affirmatively appear, from an order in the case, that the evidence was not transcribed by the stenographer within thirty days from the end of such term, it is no part of the record, although there is a *nunc pro tunc* order, purporting to make it so as of the term at which the judgment was rendered.   (p. 677.)

Error to Circuit Court, Cabell County.

Ben Strayer was convicted of murder, and brings error.

*Affirmed.*

R. L. BLACKWOOD, GORDON O'BIERNE and F. W. RIGGS, for plaintiff in error.

C. W. MAY, Attorney General, for the State.

POFFENBARGER, JUDGE:

This is a writ of error to a judgment of the criminal court

of Cabell county, sentencing Ben Strayer to confinement in the penitentiary of this State for life, under a conviction on an indictment for the murder of Sam Benedict.

Some of the assignments of error are predicated upon rulings of the court as to evidence. One is the overruling of a motion to set aside the verdict, as being contrary to the law and the evidence. Owing to defects in the record, it will be impossible to consider any of these assignments. There is but one paper in the record called a bill of exceptions. It purports to set out evidence in the case, but was not made up and signed either in the term at which the judgment was rendered or within thirty days after the expiration of that term. The term ended on the 20th day of February, 1905, as shown by a certificate of the clerk of the trial court. It affirmatively appears from a vacation order, entered on the 5th day of April, 1905, that the evidence in the case had not then been transcribed by the stenographer from his notes. Therefore, the bill of exceptions could not have been made up and signed at an earlier date. It was not done before the 26th of April, 1905, for that is the date of the certificate of the stenographer. On the 27th day of April, 1905, the court entered an order purporting to make this bill of exceptions a part of the record as of the last preceding term. If the bill of exceptions was inadvertently omitted, at said preceding term, as recited in this order, it did not, at that time, contain the evidence. This appears affirmatively from the vacation order. Under principles settled in *Tracy's Admx.* v. *Carver Coal Co.*, 57 W. Va. 587, it is clear that the evidence is no part of this record. See also *Jordon* v. *Jordon,* 48 W. Va. 600.

It is objected that the record does not show the impaneling of any grand jury, nor the finding of any indictment against the accused. The printed record does not, but certified copies of the record do show these essential steps. Hence, these assignments avail nothing.

The indictment, as returned, appeared to be against Ben Thrayer, and was so recorded in the order showing its return. On his arraignment, the defendant moved to quash, because his true name was Ben Strayer. This motion the court overruled, and then, on motion of the State, by its attorney, permitted the indictment to be amended so as to state the

true name of the defendant. Error is predicated upon this action of the court, and *Buzzard's Case*, 5 Grat. 694, and *Drake and Cochren's Case*, 6 Grat. 665, are cited. These cases are not in point. In the former, the wrong name was inserted in the indictment and the correct name was endorsed on the back of the indictment and entered in the record. There was a variance between the record and the indictment. The record showed one man had been indicted, while the indictment showed that a different person had been charged with the offense. It was not a simple case of misnomer, and, therefore, not within the statute allowing amendment. In the other case, the indictment was against Drake and Cockren, but the clerk, in making a minute of it, accidentally omitted the name of Drake. The application was not to amend the indictment on the ground of a misnomer, but to amend the record of the court, a proceeding not authorized by the statute. Section 10 of chapter 158 of the Code of 1899 provides that no indictment shall be abated for any misnomer of the accused, and authorizes the court, in case of a misnomer appearing, before or in the course of a trial, forthwith to cause the indictment or accusation to be amended according to the fact. That is exactly what was done in this case. Hence, neither argument nor authority, other than the statute itself, is necessary to justify the action of the court in so doing.

After the verdict had been rendered and a motion for a new trial made, the indictment with the verdict written on it disappeared. This was brought to the attention of the court by the clerk after having been sworn by the court. The prisoner was present in the court and a record of the fact of the loss was made. Thereupon the court directed the attorney for the State to prepare, as nearly as possible, a true and exact copy of the indictment with the endorsement thereon. This having been done, the court inspected the copy and ascertained, to its satisfaction, that it was a true and exact copy of the original indictment together with a copy of the endorsement of the verdict thereon. Said copy was then filed in the record of the case, to take the place of the original. To this action and ruling of the court, the prisoner objected, and, his objection being overruled, he excepted. It does not appear that any particular objection

was made to the copy. It is not pretended that it is not a
a true and correct copy of the original paper. · The excep-
tion is based upon want of power and authority in the court
to substitute a copy for the original. *Bradshaw* v. *Common-
wealth*, 16 Grat. 547, holds that if, after arraignment of, and
plea by, the prisoner, the indictment ,be lost, he cannot be
tried. At that time, there was no statute authorizing new
indictments to be made when an indictment has been stolen,
lost or destroyed before trial, in the manner now provided
by section 10 of chapter 52 of the Code. The decision in the
*Bradshaw case* follows that of a divided court in *Gannaway*
v. *The State*, 22 Ala. 772. That case was decided in 1853.
After that time, *Bradford* v. *The State* was decided in 1875,
and is reported in 54 Ala. 230, holding as follows: "The
circuit court has inherent power, without the consent of the
prisoner or his counsel, to order the substitution of an indict-
ment, when, after the plea to the merits, it has been lost or
destroyed during the trial." At that time, there was in Ala-
bama, a statute corresponding in all substantial particulars to
the statute now in force in this State. Hence, the reasoning of
that court in *Bradford* v. *The State*, is directly applicable
to this case. Both able and exhaustive, it shows conclusive
reasons why the danger of putting a man to trial on a copy
of the original indictment cannot result from substituting a
copy after trial. Therefore, a portion of the opinion is here
quoted and adopted as a part of this opinion: "It may be,
the defendant should not be arraigned, or put on trial except
on the original finding of the grand jury, because of that
he should have inspection, and because of the danger,
however remote, that he might be called to answer
an accusation the grand jury had never presented, if, when
it has been lost, its substitution on secondary proof of its
contents was permitted. Such must be accepted now as the
law, and the statute authorizing the preferring a new indict-
ment, is in affirmance of the reasoning on which Gannaway's
case rests. It does not authorize substitution—it authorizes
only preferring a new indictment, excluding from the bar
of the statute of limitations, the time elapsing after the find-
ing of the first, and the presentment of the new. The loss
contemplated, must have occurred before, and not during
trial. The purpose is to put the defendant on trial, only on

the original finding of the grand jury—that which carries with it, by its endorsements, the statutory evidence of verity. On that finding the accused was arraigned—the genuineness of the indictment was admitted by his demurrer, and recognized by the court in the judgment on the demurrer, and in interposing for the defendant the plea of not guilty. Of the existence and verity of the indictment, there was no controversy. Its loss occurred during the progress of the trial, and as is the most reasonable presumption from the record, after the jury had been impanneled and sworn. It was not discovered until the evidence had been introduced, and the solicitor was opening the argument to the jury. There is no doubt that the indictment substituted is an exact copy of the original. The grounds of demurrer to the original were specially assigned, and are in every respect applicable to the copy substituted. These grounds are resolvable into one—that the acts constituting the assault are not stated. They are not stated in the substituted indictment, and the statute dispenses with their statement, requiring only the statement of the fact of assault, the name of the female, and the criminal intent. Of the existence of the original indictment, and of its verity, there could be and was no controversy. The substitution was the introduction into the records, of matter previously recognized by the court, and admitted by the defendant—of matter, the verity of which had previously passed beyond controversy. It was the duty of the court to make the record speak the truth—to conform it to the facts as they existed when the defendant was arraigned, pleaded, and was put on his trial; thereby no right of the accused is imperiled—he is not subjected to any other jeopardy than that in which he was placed when put on his trial. That the grand jury had made a presentment against him; that it was returned into court; that he had admitted its verity, was already judicially ascertained, and apparent of record. His clear, constitutional right was to a verdict from the jury empanneled and sworn, which he had accepted as his triers. The loss or destruction of the indictment, could not impair or take away this right. The State had a corresponding right, that the trial should progress, and a judgment of conviction or acquittal rendered, finally determining the prosecution. Such rights cannot be impaired, or destroyed by the the accidental loss, or the will-

ful abstraction or destruction ˙ of papers pending the trial. *Mounts* v. *State*, 14 Ohio 295. The substitution of such papers on satisfactory proof, by the court, is the only mode of supplying the loss, and lies within the inherent power of the court. Otherwise, the progress of a cause could be arrested—the escape of the criminal could be secured by the felonious abstraction, or the accidental loss of an indictment." See also *Smith* v. *State*, 4 Green (Ia.) 189; *State* v. *Rivers*, 58 Ia. 102; *State* v. *Stevisiger*, 61 Ia. 623. Upon these authorities we have no hesitancy in saying ·the court did not err in substituting a copy of the original after conviction and entry of the verdict upon the record. The verdict, recorded in the order book of the court, was full and complete, showing a conviction of the crime of murder. Nothing remained to be done but to render judgment on it.

As no errror in the judgment is perceived, it will be affirmed.

*Affirmed.*