STATE OF MAINE *vs.* LUTHER J. IRELAND AND HATTIE D. BULL.

Aroostook.   Opinion June 4, 1912.

*Indictment.   Records.   Judicial Power.   Lost Indictment.   Substitution.*
*Constitution of Maine, Article I, Section 7.*

An indictment duly found, returned, and filed becomes a part of the records of the court.

At common law and independent of any statute, courts have an inherent power to preserve and protect their own records and to substitute copies of lost records.

Copy of a lost or mislaid indictment may be substituted by order of the trial court as soon as the loss is discovered and before the case is submitted to the jury, but omission to do so before conviction is not fatal; the substitution being properly made upon satisfactory evidence at a forthcoming *nisi prius* term.

On exceptions by defendants.  Overruled.

The defendants were indicted for adultery, placed on trial, and during the trial the indictment disappeared.

The case is stated in the opinion.

*Perley C. Brown,* County Attorney, for the State.

*Powers & Archibald,* for defendants.

SITTING: WHITEHOUSE, C. J., CORNISH, KING, BIRD, HALEY, HANSON, JJ.

CORNISH, J. An indictment for adultery was duly found and returned against the defendants by the grand jury, at the April Term 1911 of the Supreme Judicial Court for Aroostook County and placed on the files of the court by the clerk. Upon this indictment the respondents were arraigned and severally pleaded not guilty. A jury was thereupon impanelled, the indictment was read to the jury and the case proceeded to trial. At some later stage of the trial and before the case was finally submitted to the jury, it was discovered that the indictment had disappeared, whether it was mislaid or lost or accidentally destroyed or abstracted, is not known. No copy was substituted. In the course of the charge the presiding Justice instructed the jury that although the indictment had disappeared, and could not be taken to the jury room with them, yet inasmuch as the respondents had been arraigned upon it and had pleaded to it, and it had been read to the jury, in presenting the respondents for trial, he should permit them to retire and return a verdict in its absence.

The jury subsequently returned a verdict of guilty. Counsel for respondents before the verdict was taken, seasonably objected to receiving any verdict in the absence of the indictment and also moved the discharge of the respondents for the same reason. The presiding Justice, however, received the verdict and subsequently pronounced sentence upon one of the respondents while the case against the other was continued for sentence. The case is before the Law Court on the respondents' exceptions to these rulings.

This presents a question of novel impression in this State. What are the powers of the court in case an original indictment is missing from the files? Is it indispensible to the validity of a sentence that the indictment should be among the records at the time sentence is pronounced? This is an important question because the rights not only of the accused but of the public are affected by its answer.

It must of course be conceded that an indictment duly found by the grand jury, duly returned to court and filed by the clerk, becomes at once a part of the records of the court, and there must be and is an inherent power in the court to preserve and protect its

own records. Shepley, J., in speaking of civil actions, and we see no reason why the words would not apply with equal force to criminal causes, said, "Every court of record, has power over its own records and proceedings to make them conform to its own sense of justice and truth, so long as they·remain incomplete and until final judgment has been entered," *Lothrop* v. *Page,* 26 Maine, 119.

The record itself is but the outward evidence of a cause to which the jurisdiction of the court has attached. That jurisdiction cannot be taken away by the mere loss or abstraction of a part of the record. Rather the jurisdiction remains and the missing record should be supplied or substituted in such manner as the court itself may prescribe.

As the Supreme Court of Alabama said in *Bradford* v. *State,* 54 Ala., 230, where the indictment was lost after plea had been entered and the trial had begun; "Courts of record, independent of express legislation, have power to substitute any of the files or records which may be lost or destroyed. The power is a matter of necessity, whether the loss occurs while the cause is in fieri, before it has progressed to final judgment or after such judgment has been rendered, and whether the loss is of the whole record or of papers, which when it is finally made up will constitute a part of it."

This succinct statement of a fundamental principle we adopt as indispensible in the administration of criminal law. If the court does not possess the power to authorize the substitution of a lost indictment, the rights of the public are at the mercy not merely of accident but of design and the destruction of a court house with its contents by fire is equivalent to a jail delivery.

The decisions in other states are not in entire harmony, but it can safely be asserted that the overwhelming weight of authority has so solved the problem as to protect all the legal rights of the accused on the one hand and of the public on the other without allowing the accused to escape his deserts either through accident or artifice.

In some states, statutes have been passed, expressly conferring this power in criminal cases, as in Arkansas, *Miller* v. *State,* 40 Ark., 488; Louisiana, *State* v. *Heard,* 49 La. Ann., 375. 21 So., 632;

Oklahoma, *Harmon* v. *Territory,* 9 Okl., 313, 60 Pac., 115; and in Texas, *Schultz* v. *State,* 15 Tex. App., 258.

In other States, the courts, while acknowledging the inherent common law power, have construed statutes, apparently originally designed to cover substitution in civil actions only, to include criminal cases as well. See *State* v. *Gardner,* 13 Lea, (Tenn.), 134; *Roberson* v. *State,* 45 Fla., 94, 34 So., 294.

In many jurisdictions, however, the courts have assumed and exercised the power of substitution, independent of any statute.

In *Ganaway* v. *State,* 22 Ala., 772, a majority of the court denied the power of the trial court to substitute an indictment before arraignment and trial. But in the later case of *Bradford* v. *State,* 54 Ala., 230, the indictment was lost after arraignment and plea and the substitution of a copy during the trial was permitted.

In the early case of *State* v. *Harrison,* 10 Yerg, (Tenn.), 542, it was held that a Judge could not supply a lost indictment upon affidavits of others and independent of his own recollection, but this decision was overruled in the later case of *State* v. *Gardner,* 13 Lea, (Tenn.), 134, in which it was held that the substitution might be made upon affidavits, independent of the recollection of the Judge. In that case ten indictments were stolen from the clerk's files after arrest but before trial.

Without quoting at length further from decisions in other States, suffice it to say that the inherent power of the court at common law has been accepted as authority for substitution in the following States:

In South Dakota, *State* v. *Circuit Ct.,* 20 So. Dak., 122, 104 N. W., 1048, (1905).

In Mississippi, *McGuire* v. *State,* 76 Miss., 504, 25 So., 495, (1899).

In West Virginia, *State* v. *Strayer,* 58 W. Va., 676, 52 S. E., 862, (1906) where the indictment was lost after verdict of guilty rendered.

In Pennsylvania, *Com.* v. *Becker,* 14 Pa. Super. Ct., 430.

In Iowa, *State* v. *Rivers,* 58 Iowa, 102, 12 N. W., 117; *State* v. *Stevisger,* 61 Iowa, 623, 16 N. W., 746; *State* v. *Shank,* 79 Iowa, 47, 44 N. W., 241, (1890).

In Indiana, *Buckner* v. *State,* 56 Ind., 208.

In Missouri, *State* v. *Simpson,* 67 Mo., 647; *State* v. *Paul,* 87 Mo. App., 47, (1900) and *State* v. *McCarver,* 194 Mo., 717, 92 S. W., 684, (1906).

The contrary view is held in *Bradshaw* v. *Com.,* 16 Gratt., (Va.) 507, 86 Am. Dec., 722, but it has not been generally followed, and the citations above given abundantly warrant the general doctrine laid down by text writers that a copy may be substituted independent of an authorizing statute. 1 Bish. Crim. Proc. Vol. 1, Sec. 1400, 22 Cyc. p. 221, 10 Ency. Pl. & Pr. p. 417.

But the respondents further contend that even if a copy might have been substituted when the loss was discovered none was in fact substituted and a verdict could not legally be rendered or sentence passed without either the original indictment or a copy on the files of the court. Why not? No legal or constitutional right of the respondents has been sacrificed or invaded.

The Constitution of Maine, Art. 1, Sec. 7, provides that "No person shall be held to answer for a capital or infamous crime unless on a presentment or indictment of a grand jury," with certain exceptions immaterial here. This provision has been fully complied with. The indictment had been returned by the grand jury and to it the respondents had pleaded and placed themselves on trial as the docket entries prove, thus admitting its verity. Their next constitutional right was to the verdict of a jury duly impanelled and sworn which they had accepted as their tribunal. This right was fully given them.

It was a right that could not be taken from them by the mere loss or abstraction of a paper, and the State had the corresponding right that notwithstanding such loss or abstraction the case should proceed and a judgment of conviction or acquittal be rendered. These rights are too sacred to be impaired by the accidental loss or wilful abstraction of papers during the trial, and the mere fact that the jury did not have the indictment with them in the jury room could not nullify all that had gone before. The issue had already been made up. The jury knew the nature of the offence charged and the parties involved. The presence or absence of the indictment itself could not aid or hinder them in reaching their verdict. It did not in this case. Such meritless technicalities should not be permitted to thwart the administration of criminal justice.

The remaining constitutional right vouchsafed to the accused is that they shall not be put twice in jeopardy for the same offense. This can be secured by substituting a copy for the original. Such a copy can be readily prepared by the County Attorney who drafted the original. The notes of the stenographer at the trial will furnish all necessary data as to place, time and parties, so that no possible error can creep in. Such a copy duly certified by the county attorney can, by order of court at the next term, be placed on file in lieu of the original and the rights of the respondents be thereby safely guarded.

It would have been proper for the County Attorney to ask for such substitution as soon as the loss was discovered, but the omission to do so at that time was not fatal. Substitution can be made by the court upon satisfactory evidence at the coming term, and the rights of the respondents on the one hand and of the public on the other be fully protected.

The rulings of the presiding Justice being free from exceptionable error, the entry must be,

*Exceptions overruled.*