State v. Stanley.

---

## THE STATE v. STANLEY.

1. **Criminal Law:** EVIDENCE. The ownership of property need not be established in the party from whom it is alleged to have been stolen, if it is shown to have been in his possession, and to have been stolen therefrom.

2. ————: AIDING AND ABETTING. A person is guilty of aiding and abetting a larceny if, in accordance with an agreement therefor, he takes care of the family of the felon while the latter is disposing of the stolen property.

3. **Practice:** SIGNING INSTRUCTIONS. The statute (Code, § 4440) requiring that the instructions be signed by the judge is directory, and the failure to comply therewith will be held to be error only when the party complaining is prejudiced thereby.

4. **Criminal Law:** EVIDENCE: CORROBORATION. The corroboration of the testimony of an accomplice is not limited to the testimony of witnesses, but may be circumstantial.

| 48 | 221 |
| 81 | 602 |
| 48 | 221 |
| 96 | 261 |
| 100 | 651 |
| 48 | 221 |
| 106 | 703 |
| 48 | 221 |
| 115 | 119 |
| 48 | 221 |
| 120 | 166 |
| 48 | 221 |
| 129 | 138 |
| 48 | 221 |
| 137 | 6 |

*Appeal from Decatur District Court.*

THURSDAY, APRIL 18.

THE indictment charged the defendant with stealing two horses, the property of W. W. Westbrook, of the value of two hundred dollars each.

Having been found guilty, and sentenced as provided by law, he appeals.

*Warner & Bullock,* for appellants.

*J. F. McJunkin, Attorney General,* and *Smith McPherson, District Attorney,* for the State.

SEEVERS, J.—I.   It is objected there was no evidence showing that the horses were the property of Westbrook.   There was, however, evidence showing that the horses were in the possession of Westbrook, and being so, they were stolen.   This is sufficient.   2 American Criminal Law, § 1824; 3 Greenleaf's Evidence, § 161.

1. CRIMINAL law: evidence.

II.   The court gave the following instruction: "The aiding and abetting may consist in watching or guarding against surprise, averting suspicion against the parties while they had the property, agreeing to or taking care of the families of parties who have the property, and other similar acts."   The latter part of this instruction, it is said, is clearly erroneous.

2. ——: aiding and abetting.

If there was evidence on which it could be based, it is without doubt correct.   There was evidence tending to show that defendant knew the horses were to be stolen, and went to the place or near it, and was in a position to give the alarm, if necessary, to the persons engaged in the stealing.   We think this sufficient, whether he agreed to give such alarm or not.   It was for the jury to determine his object and pur-

pose from the testimony, and the position, under the circumstances, in which he voluntarily saw proper to place himself. So if, at the time or before the horses were stolen, he *agreed* to take care of the families of the felons while disposing of the property, this would make him an accessory before the fact, and liable to be tried and punished as a principal. Code, § 4314. John Hatfield testified: "When we took the horses out of the stable, defendant was standing right by, watching that none came up. Defendant was to take care of our families while we were gone with the horses." We are constrained to believe this evidence fully warranted the giving of the latter part of the instruction. Besides this, the abstract shows the court gave other instructions, which might have had the effect to qualify or materially change the foregoing. Instructions must be read and construed as a whole, and error cannot be presumed, but must be affirmatively shown. Hence, all the instructions given should have been contained in the abstract, so that it could be ascertained and known there were no others which qualified those given and claimed to be erroneous.

III. The only evidence, it is urged, showing the guilt of the defendant, is that of John Hatfield, an acknowledged accomplice, and that he has not been corroborated as required by Code, § 4559. One Woodard testified that defendant was a witness when Hatfield was tried for this offense before a justice of the peace, and he gave evidence as to what the defendant then testified to. If the jury believed Woodard, and they must have done so, the corroborating evidence was full, complete, and entirely satisfactory.

IV. The defendant objected to Hatfield testifying in the case, because the minutes of his evidence taken before the grand jury were not returned with the indictment. This objection, it may be conceded, was well taken, and yet the witness was properly permitted to testify, because the amended abstract shows that a notice was served on the defendant in

State v. Stanley.

strict accord with the provisions of Code, § 4421, that said Hatfield would be introduced on the trial.

Appellant complains that this additional abstract was not filed in time; that the defendant has been prejudiced unjustly thereby. As he does not deny the correctness of this abstract, we are unable to concur in this view. It was filed in time for him to reply thereto, and this is sufficient.

V. Because the judge failed to sign the instructions as **3. PRACTICE: signing instructions.** required by Code, § 4440, the appellant urges there must be a reversal. But he was in no manner prejudiced by such failure, and the statute is clearly directory.

VI. The abstract is somewhat obscure, but, giving the defendant the benefit of the doubt, we infer the court gave to **4. CRIMINAL law: evidence: corroboration.** the jury an instruction on the subject of the testimony required before the defendant could be convicted on the evidence of an accomplice, and in so doing copied Code, § 4559.

Thereupon, as explanatory of, or as an addition to, such instruction, the defendant asked the following: "The corroboration referred to in the foregoing should be by at least one credible witness. If you believe that John Hatfield was not corroborated by at least one credible witness, you should find the defendant not guilty."

This was refused. The corroboration required by the statute may be circumstantial. But it may be claimed, with a degree of propriety, at least, there was no such evidence but that, as to anything tending to corroborate Hatfield, the State had to rely solely on the evidence of Woodard, and that if he was not credible the instruction asked should have been given. There was evidence tending to impeach Woodard. But the difficulty is the residue of the instructions given by the court are not before us. We are, therefore, unable to determine that the refusal to instruct as asked was an error.

VII. It is lastly urged the evidence does not sustain the verdict. If the story told by Hatfield was believed by the jury, there is not a particle of doubt of his guilt. This wit-

ness was before the jury; he was brought from the penitentiary for the purpose of testifying; his participation in the crime was fully known and understood by the jury, and yet they must have believed him. If we could have seen him while testifying, we might have come to a conclusion different from what the jury have, but, as this cannot be, we are unable to say the jury were not warranted in believing him.

This is also true as to the trial judge. For if he did not believe the witness, it was his imperative duty to have set the verdict aside.

AFFIRMED.