/ THE STATE v. RIVERS.

1. **Criminal Law:** INDICTMENT LOST: COPY SUBSTITUTED. When a defendant has been arraigned upon an indictment, and it is afterwards lost or abstracted, the court may, upon motion, substitute a copy and proceed upon the record thus made, the same as upon the original indictment.

2. ——— : ——— : ———. Where the substituted copy was made from the record of the original indictment by the clerk, and was duly certified by the clerk, and evidence was taken identifying it as a true copy, it was the best evidence of a lost record attainable.

3. ——— : FALSE REPRESENTATIONS: EVIDENCE. In a trial under an indictment for obtaining money by false pretenses, where the transactions were of a complicated nature, it was competent for the defendant to show the course of dealing between the parties, both before and after the date of the alleged crime; as reflecting upon the intent of the defendant, or throwing light upon the question whether the party was in fact deceived, or tending to show whether the creditor was using the criminal law to enforce the collection of a debt.

4. ——— : ——— : INSTRUCTIONS. In a prosecution for obtaining property by false pretenses, the jury should have been instructed that it was necessary for the State to prove the substance of the charge.

*Appeal from Dallas District Court.*

WEDNESDAY, APRIL 19.

ON the 10th day of December, 1878, the defendant was arraigned in the Polk county District Court, upon an indictment for obtaining money and property by false pretenses. On the next day he filed a motion to set aside the indictment, which motion was overruled. On the 12th day of the same month, he filed a demurrer to the indictment, which was overruled, and on the same day he entered a plea of not guilty. On the 16th of the same month, he filed a petition for a change of venue, which was granted and the cause was transferred to the Dallas District Court, and a bail bond was executed. At the October term, 1879, of the Dallas District Court, the cause was tried to a jury and the defendant found guilty, and the verdict was set aside and a new trial granted, on his motion.

The cause was called for trial again at the October term, 1880, when it was ascertained that the indictment had been lost or stolen. On motion of the district attorney a copy of the indictment was substituted, and made of record, and a trial was had which resulted in a verdict of guilty. A motion in arrest of judgment, and a motion for a new trial, were overruled and judgment was pronounced upon the verdict. The defendant appeals.

*C. C. Cole* and *A. R. Smalley,* for appellant.

*Smith McPherson, Attorney-general,* for the State.

ROTHROCK, J.—I. The defendant resisted the motion to substitute the copy of the original indictment, and in his motions in arrest of judgment, and for a new trial, he again raised the question of the power of the court to make the substitution, and he now strenuously insists that there was no such power, and no warrant in the law for putting him upon trial upon a copy of the indictment.

1. CRIMINAL law: indictment lost: copy substituted.

Some question is made as to whether the District Court of Dallas county had jurisdiction at any time of the cause. It is said that there is no record that an indictment was ever found, and no record showing that the indictment, with the other original papers or certified copies thereof, was ever received and filed by the clerk of the District Court of Dallas county. It does appear of record, however, that the defendant appeared in the Polk District Court, and was arraigned upon an indictment; that he filed a motion to set it aside, and demurred to it, and filed his petition for a change of venue, and executed a bail bond; that he appeared at the proper time and was tried upon the original indictment in the Dallas District Court, and was convicted, and a new trial was granted upon his motion. After this trial the indictment was lost or stolen.

There appears to be a certified copy of what purports to be

all the record entries in said cause in Polk county. This was filed in the office of the clerk in Dallas county, on the 10th day of March, 1879. It does not appear of record that the original indictment was certified by the clerk of the Polk District Court, and there is no record of the filing of it in the clerk's office in Dallas county. We think, that notwithstanding these omissions, the District Court of Dallas county acquired jurisdiction of the cause. The indictment was of record in Polk county. It was an original paper filed in that court, and being such, it was part of the record. Code, § 196. This original paper was placed among the files in Dallas county, and by being among the files it became part of the record there without any indorsement thereon by the clerk of that court. Indeed, a failure of the clerk in this respect, in filing the indictment in the first instance, will not invalidate the proceedings. *State v. Glover*, 3 G. Greene, 249; *State v. Shepard*, 10 Iowa, 126. And no record of the filing of the indictment, other than the indorsement of the clerk, is necessary or proper, at least, not until after the arrest of the defendant. *Wrockledge v. State*, 1 Iowa, 167. Whatever right the defendant may have had to compel a correction of the record, to comply with these requirements of the statute, which appear to us to be merely directory was, in our opinion, waived by submitting to the first trial without objection thereto.

The main question, however, on this branch of the case is, had the court power to substitute a copy of the lost or stolen indictment, and put the defendant upon trial?

The defendant's contention is, that he could be tried only on the "identical, original indictment found by the grand jury of Polk county." In *Ganaway v. The State*, 22 Ala., 772, the defendant was indicted, and the cause was continued at several successive terms of the court. At the term at which the cause was called for trial the indictment could not be found, it having been lost or abstracted. The court permitted a copy to be substituted, and the defendant was tried

and convicted. It was held by a majority of the court that this was erroneous. It was conceded that the court might order an amendment or substitution of anything which it has the power to make, or order to be made, but, that as no power but the grand jury can make an indictment, or direct one to be made, the court cannot supply one which has been lost or destroyed.

In the case of *Bradshaw v. Com.*, 16 Grat. (Va.), 507, it was also held that it was error to substitute a copy of an indictment which had been lost or destroyed. The court, in its reasoning, follows the case of *Ganaway v. The State, supra.* In *State v. Harrison*, 10 Yerger, 542, the defendant was indicted, and the indictment was lost or mislaid during the trial. The prosecution moved to make a copy of the indictment a part of the cause. It was held that this might be done if the court acted from recollection of the contents of the indictment alone, but that a substitution of a copy could not be made upon proof by affidavits, independent of the recollection of the judge, of the contents of the lost instrument.

In *Mount v. The State*, 14 O., 295 the indictment was lost or stolen after verdict of guilty. The court say: " It was not indispensable to the sentence that the original indictment should be before the court. If lost or destroyed by accident or by the fraud or design of the plaintiff in error, or stolen by him or another, and the prosecution were not in fault, its place might have been supplied by a copy like any other record or pleading."

In *Buckner v. State*, 56 Ind., 208, the record showed the following entry: "*State of Indiana v. Thomas J. Buckner*, —selling without license—indictment burned." The record did not contain any indictment and the court said: "If the defendant was tried upon a certified copy of the indictment, that copy constituted a part of the record, and should have been contained in the transcript. We must presume that the transcript is complete and perfect." It was held that if the

indictment had been destroyed the defendant might have been tried upon a copy of the record, if it had been recorded.

In *Bradford v. The State*, 54 Ala., 230, the defendant was put upon trial upon an indictment. After all the evidence was introduced, and the attorney for the commonwealth was about to commence his argument to the jury, it was discovered that the indictment had been lost during the trial. Counsel for the defendant consented that "the indictment might be substituted and the trial proceed under the substitute." · The trial then proceeded precisely as though the original indictment had not been lost, and the defendant was found guilty. It was held that this was no error; that the court had the inherent power to preserve its records by substitution, if necessary, and that as the defendant had demurred to the indictment and pleaded not guilty to it, he thereby admitted that it was an indictment. This case does not overrule *Ganaway v. The State*, *supra*, but distinguishes it upon the ground that in that case the defendant had not been arraigned, and had not pleaded to the indictment. In *State v. Simpson*, 67 Mo., 647, the defendant was tried upon a copy of an indictment which was substituted for the original which was lost. The court approved of the practice, but reversed the case upon the ground that there was no evidence that the indictment had ever been made of record. The power to substitute a copy of a lost indictment is recognized in Bishop's Criminal Procedure, Vol. I, § 1215.

The foregoing are the authorities cited by counsel for the defendant and for the State upon this question. It will be seen that in *Ganaway v. The State*, and *State v. Harrison*, the power of substitution is denied, and in the other cases, while it may be said the question does not fairly arise, the power is affirmed. Both of the last named cases are based upon the same reasoning, which is, that the court, having no power to present or make an indictment, cannot substitute a copy for one which is lost, and the question is treated the same as though it involved the amendment of an indict-

ment. Here, we think, is the vice of the opinions in these cases: It is not a question of the amendment, nor of the creation or presenting or making of an indictment. Of course it must be conceded that a court cannot amend an indictment by adding to or striking out any of its allegations. But the substitution of a lost record is an entirely different thing. It cannot be that a court must lose its jurisdiction of a cause, because part of the record has been lost or abstracted.

There is an inherent power in the court to preserve and protect its jurisdiction when it has once attached, and to that end we can see no good reason why it may not substitute any of its records which may be lost, by properly authenticated copies.

The case at bar is similar to *Bradford v. The State, supra.* There, the defendant had been arraigned and pleaded to the indictment before it was lost or stolen. In the case at bar he had not only been arraigned and pleaded, but he had been once tried. If in that case it was competent to substitute a copy, it surely was proper in this.

We are prepared to hold that when a defendant has been arraigned upon an indictment, and it is afterward lost or abstracted, the court may, upon motion, substitute a copy and proceed upon the record thus made, the same as upon the original indictment. This rule is in consonance with modern practice, which disregards unimportant technicalities, not vital or material to the rights of the parties.

II. The substituted copy was made from the original by the clerk of the District Court of Dallas county, and was properly certified by the clerk. Upon being produced, and upon evidence being taken identifying it as a copy, from which it appeared that it was complete, with the exception of the indorsement of the name of one witness thereon, the proper indorsement was made, and the order of substitution was entered. There can be no question but that the copy was sufficiently proven to be correct. The indictment was a record in Dallas county; the copy was made by

the proper officer, and was the best evidence of the contents of the lost record which was attainable. Code, § 3702. ' The indorsement thereon of the name of the witness was made upon a sufficient showing, in view of the fact that the minutes of the testimony taken before the grand jury still remained of record.

III.    We hazard nothing in saying that the facts of the case are very complicated    It appears that the defendant had for some years quite a number of business transactions with the Valley Bank of Des Moines, and that on the 11th day of October, 1876, the bank held his notes, amounting in all, to something over $1,-000, which were secured by certain collaterals, among which was a mortgage and a promissory note, made by one Hudspeth, for about $1,000. On that day the defendant went to the bank and effected an exchange of securities by taking up the Hudspeth note and mortgage, and substituting in its place a mortgage for $1,600, made by one Coffeen, on certain lands in Woodbury, Cass, and Lucas counties. It is charged in the indictment that the last named mortgage was not a valid lien upon any of the property described therein, and that the defendant by falsely representing to the cashier of the bank that the mortgage was a first lien, induced him to make the exchange. It appears that at the time of the exchange there had been a decree of foreclosure entered on the Coffeen mortgage in the Cass District Court, in the name of the wife of the defendant to whom it had been assigned. It also appears that most of the mortgaged property in Lucas and Cass counties, had been released from the lien of the mortgage. It further appears that while the defendant was the owner of the Woodbury county land, and while the Coffeen mortgage was a lien thereon, he and his wife had conveyed the same to one Webster. It is claimed by the State that the defendant was guilty of false pretenses in taking from the files of court a mortgage which had been foreclosed and to which he had no right, and representing to the cashier

3. ——:
false representations: evidence.

of the bank that it was a valid first mortgage. It is further claimed that the mortgage, even with an assignment of the decree of foreclosure, was wholly worthless, being no lien upon the property. On the other hand, it is claimed by defendant that he made no representation as to the validity of the mortgage, except so far as it covered the land in Woodbury county, and as to that land the defendant now claims that it is a valid and first lien. It appears that when the decree of foreclosure was entered in the name of Mrs. Rivers, Webster, the grantee of the Woodbury county land, was made a party by publication, and the mortgage was foreclosed against him. Whether Mrs. Rivers could become a purchaser of the mortgage, and whether she could enforce the same as against Webster, we do not deem it important to determine. We have stated enough of the facts to show that it was no easy task for the jury to determine whether the defendant intended by the transaction to defraud the bank. And, we have stated these facts for the purpose of pointing to other material facts, which we think should have been submitted to the jury, but which were excluded by the court. And here it is proper to say that the defendant was a witness in his own behalf, and if what he states as to the representations made are true, he was guilty of no crime, that is, he was not guilty of any criminal intent. The defendant sought to introduce in evidence the *lis pendens* filed in Woodbury county in proper and legal form, and filed June 28, 1876, and indexed, making all parties interested, including Webster, defendants to the foreclosure. He also offered in evidence a complete transcript from Cass county District Court of the Coffeen decree and an assignment thereof to the bank, and filed by the bank in Woodbury county, and also a special execution issued on the decree to the sheriff of Woodbury county, and placed in the hands of the attorney of the bank. He also offered in evidence his account current with the bank for some two years previous to, and after the alleged fraud. This account, it is claimed, showed a large number of trans-

actions amounting to some $10,000. All this evidence was, at the instance of the State, excluded. We think it should have been admitted, because it was competent for the defendant to show, not only the transactions and course of dealing before the date of the alleged crime, but to show the negotiations between the parties after that time, as reflecting upon the intent of the defendant, and whether the cashier of the bank was in fact deceived and misled by any alleged false representations. Indeed, the ·facts of the case are so complicated that nothing should have been excluded which would throw light upon the question whether the cashier of the bank was in fact deceived, or whether the bank was knowingly taking ·desperate chances in loaning money upon collaterals of a doubtful character. Cases of this kind should be sifted to the bottom, and when a party appears to have obtained property by means of pretenses which are knowingly false, he should surely be punished. On the other hand, nothing which tends to show that a creditor is using the criminal law, to enforce the collection of a debt, should be suppressed or kept from the consideration of the jury. We do not say that the bank in this case is vulnerable to that charge. But a long experience in the trial of ·criminal cases has taught us that the section of the statute, under which this indictment was presented, is too often used as a means of enforcing the collection of debts, and it not infrequently happens that cases are only brought to trial, because of the inability of the·defendant to discharge the obligation after indictment.

IV. A large number of exceptions were taken to the instructions given by the court to the jury and for the refusal to give instructions asked. We have not critically examined them because we think the judgment must be reversed for error in excluding competent evidence as above indicated. In view of a retrial, however, we think the seventeenth and eighteenth instructions given should point out what of the representations must be found to be false in order to warrant a conviction. By these instructions

ᴊhe jury are directed that it is only necessary to find that the defendant, in substance, made "the statements alleged in the indictment as false and fraudulent, or some of them." The jury should have been told that it is necessary for the State to prove the substance of the charge, which in brief is, that the defendant falsely represented the mortgage to be a valid lien on the property therein described. If he made such representation, knowing that it was not a valid lien, and the cashier was thereby induced to give up the Hudspeth mortgage, he is guilty; but if he believed it to be true, or did not know it to be false, or if the cashier was not deceived, he is not guilty.

REVERSED.