STATE OF IOWA, Appellee, v. HARRY PHILLIPS, Appellant.

No. 40395.

April 10, 1931.

Rehearing Denied October 5, 1931.

A. E. Maine, for appellant.

John Fletcher, Attorney-general, and Neill Garrett, Assistant Attorney-general, for appellee.

Morling, J.—The indictment charges that defendant on or about the 16th day of May, 1929, did maintain a private garage for the purpose of keeping therein intoxicating liquor with intent to sell, give away or dispose of the same contrary to law. The sheriff and deputy sheriff testify, in substance, that in the evening of May 16, 1929, under search warrant, they searched defendant's premises, found about 4½ cases of beer, two kegs and a jug of wine, a number of cases of bottles empty or partially so, a sack full of malt cans, a bottle capper, an ice box and the like; that they found three girls and a boy and defendant in the garage; that two of the girls were each drinking a bottle of beer; that defendant wanted to know if he wasn't allowed to have beer; that the other people in the garage said they didn't

think it was against the law to drink beer; that defendant said . he brought the girls from Muscatine, was going to a dance; thought they would stop and get a bottle of beer before they went over; that a man came in the garage after they were there and then walked out and threw a bottle in the weeds; that the two kegs of wine were found in the cellar of the house; that they examined the contents of the kegs and bottles and that such contents were intoxicating liquor, beer and wine and could be used for beverage purposes. Defendant and wife testified in substance that defendant before the middle of the summer of 1928 had been running an oil station in which he sold near beer, pop, cigars, candy and stuff like that; that he bought empty cases and got a rebate on them; that when the sheriff was there he had bottled goods made from what was in that malt can. ''I made it and bottled it the same day on May 16th. In making it take warm water and dissolve the malt, put my yeast in it and bottle it up. That is all there is to it. There is no fermentation or anything of that kind.'' They testified that the jug was in the cellar with two kegs in which there were juices left over from canning cooked fruit, mostly blackberry, some grape and rhubarb; that the wife had been troubled with appendicitis during attacks of which she could not eat solid food; that the principal diet the Doctor advised her to take was grape juice and she would drink these juices and some of the malt preparation. This for the purpose of the case sufficiently shows the trend of the evidence.

We do not consider errors assigned but not argued.

I. Defendant contends that the indictment merely charges that the maintenance of the building was with intent to sell, etc. Not ''that there was anything kept in said garage but merely an intent to do something,'' and that the testimony of the officers should not therefore have been admitted, citing State v. Tierney, 74 Iowa 237, 238; State v. Elmers, 198 Iowa 1041. Without passing upon the sufficiency of the indictment if it had been properly attacked (see State v. Bruns, 211 Iowa 826), it is enough to say that the sufficiency of the specifications in the indictment was not raised before the jury was sworn and was not open to question on objections to evidence, exceptions to instructions or motion in arrest. 43 G. A., Chapter 270; State v. Porter, 206 Iowa 1247, 1249; State v. Costello, 200 Iowa 313.

II. Defendant urges that there is no competent evidence

to support the indictment for the reason that the undisputed evidence shows that the so-called intoxicating liquors seized in the cellar were cooked fruit juices placed there by the wife and used by her; that there is no evidence contradicting her testimony as to the manner in which the juices were prepared and placed in the kegs; that the malt preparation was made by defendant that morning and there was no fermentation. Chemical analysis was not made. The sheriff testified that at the time of the seizure he examined the contents of the containers; that he had possession of the property all the time; that the bottles contained intoxicating liquor, beer and wine; that the property had not been changed in any way since it came into his hands. The deputy sheriff testified that he also at the same time examined such contents and that it was wine, beer, and intoxicating liquor. These witnesses qualified themselves to testify. Their testimony was admissible. State v. Eggleston, 201 Iowa 1; State v. Parenti, 200 Iowa 333; State v. Bourgeois, 210 Iowa 1129. The case was for the jury.

■ III. Defendant argues that the testimony should have been excluded because there had been no adjudication under the search warrant. The point is not well taken. State v. Bourgeois, 210 Iowa 1129.

■ IV. Defendant also argues here that some of the instructions were erroneous. No exceptions were taken to them and whether or not they are correct is not before us for consideration. State v. Dunham, 206 Iowa 354.

■ V. Among other grounds assigned for new trial defendant asserted error in admitting as exhibits the malt syrup and the fruit juices seized by the sheriff "and permitting the same to go to the juryroom to aid the jury in determining at this time whether or not the same contained any alcoholic content, leaving it to the jury to speculate, there being no competent evidence in behalf of the plaintiff showing that the contents at the time the same were admitted in evidence and passed upon by the jury was in the same condition as the date of seizure, all as shown by the official shorthand reporter's notes;" that "the court erred in permitting said exhibits to go to the jury-room for said purpose, and the drinking of the contents thereof by the jury was wholly prejudicial to this defendant, and that said jury disregarding the evidence in said case, based its verdict

upon the present content of said exhibits submitted to them for the purposes herein set forth.'' This motion was supported by defendant's affidavit to the effect that after the jury had left their room and the exhibits had been removed he went to the room and found on the floor 11 caps that had been removed from the bottles ''and learned that the jury had used at least 11 bottles of the malt syrup preparation that had been prepared by me and bottled on the 16th day of May, 1929. How many more bottles had been opened and used by the jury I was unable to learn as the exhibits had been taken from the jury room. * * *'' Defendant says in his affidavit that he heard the argument of the county attorney in which he told the jury that they had a right to test the samples and drink of them, and that from the evidence after the jury had left the room it showed conclusively that the jury had followed the instructions of the county attorney and had consumed the contents of quite a number of the bottles that had been submitted to them as exhibits in said case; ''that I have now in my possession which I retained, the 11 caps picked up from the floor; that I also learned that several of the bottles had been recapped by the sheriff and bailiff, how many in excess of the 11 bottles used I did not learn.'' It is obvious that the defendant's affidavit as to what occurred in the jury room consists merely of conclusions and hearsay.

The alleged statement of the county attorney in argument and objection to it cannot be shown or raised in this manner. Crandall v. Mason, 198 Iowa 139.

In resistance members of the jury made affidavits to the effect that the jury first read the instructions, then discussed them, then examined the exhibits; that several jurors tasted the wine from the kegs and large bottle; that they then took a ballot which resulted in a verdict of guilty; that no other ballot was taken. They then opened several bottles of the beer and it foamed out considerably; that the jurors only tasted the wine, not much beer was drunk. The deputy sheriff, who assisted in the search, made affidavit that he went to the juryroom to assist in taking out the exhibits, saw two open bottles of beer on sides ''and most of the beer had ran out on the floor, and I also saw four other bottles of beer with the caps off and about an ounce of beer had been taken out of each bottle. There was not over 10 ounces of beer missing from all the bottles which had been opened by the jury.''

This ground of the motion for new trial raised two questions—
1. Whether it was error for the jury after retiring to taste the wine in the seized containers. 2. Whether there was misconduct of the jury in drinking intoxicating liquor. The sheriff testified, "The property had not been changed in any way since it came into my hands. I have examined the contents of these exhibits here before the court and jury. I examined them the night they were seized;" that it looked the same.

With respect to the admissibility in evidence of the exhibits containing the malt syrup and the fruit juices it is sufficient to say that the evidence in behalf of the State tends to show that there had been no change in the condition of the liquor between the time of seizure and the time of trial. That a change had occurred would be a matter of inference. Whether such inference should be drawn was for the court and not the jury to decide. The court did not err in admitting the exhibits..

With respect to sending them out with the jury we find no objection thereto prior to the motion for a new trial.

It is a settled rule of this State that the mere smelling and tasting of the liquor in controversy by the jury is not prejudicial. State v. Elmers, 198 Iowa 1041; State v. Reilly, 108 Iowa 735; State v. Ling, 198 Iowa 598.

Cases from other jurisdictions hold that the discretion of the court is best exercised by requiring such tests to be made in the presence of the court and in the course of the trial. We think this would be the preferable practice, but the whole matter rests in the sound discretion of the court. No prejudice resulting from the tasting of the wine is shown.

The affidavits tend to show that the jurors drank some of the beer. The extent to which the beer was taken or consumed and the effect of the alleged drinking were matters of fact for the trial court to determine. The motion for a new trial based upon this alleged misconduct raised a question of fact for the trial court to determine and was addressed to his sound discretion. His determination was within the range of the evidence and no abuse of discretion appears. State v. Reilly, 108 Iowa 735.

We find no prejudicial error.—Affirmed.

FAVILLE, C. J., and EVANS, STEVENS, DE GRAFF and KINDIG, JJ., concur.

GRIMM, ALBERT and WAGNER, JJ., dissent.

GRIMM, J.— (Dissenting)—All of the kegs, bottles, jugs and other containers containing liquid were sent as exhibits to the jury room with the jury when they retired for their deliberation. It appears that during the deliberations of the jury certain of the jurors opened the containers and sampled the contents. Moreover, it appears that the county attorney, in argument, told the jury in substance, that they had the right to test the contents of the containers by drinking it to satisfy themselves in relation thereto.

It is the contention of the state that all of these liquids in each and every one of the containers sent to the jury room contained intoxicating liquors.

In State v. Reilly, 108 Iowa 735, this court said:

"Where, during the progress of a trial, but before final submission of the case, a juror indulges in the use of intoxicating liquor, we have held that the verdict should not be disturbed unless prejudice is shown; that the fact alone that the liquor was taken is not enough to vitiate the verdict. Hemmi v. Railway Co., 102 Iowa 25, and other cases cited. On the other hand, the rule is established that prejudice will be presumed if the liquor is drunk after the jury has retired to consider the case. State v. Baldy, 17 Iowa 39; Berry v. Berry, 31 Iowa 415."

This holding is based on the proposition that the parties to an action have a clear right to the cool, dispassionate and unbiased judgment of each juror.

Moreover, the drinking by the jurors of liquids claimed to be intoxicants during their deliberation on the question whether the liquids are intoxicating is erroneous and prejudicial. The question here is whether prejudice arose by reason of permitting the jury to sample the contents of the containers in which the State contends intoxicating liquors were contained.

Section 11503 of the Code of 1927 is as follows:

"*What jury may take with them.* Upon retiring for deliberation, the jury may take with them all books of accounts

and all papers which have been received as evidence in the cause, except depositions, which shall not be taken unless all the testimony is in writing and none of the same has been ordered to be struck out."

It will be noted that the statute only prohibits the sending of depositions as exhibits with the jury when deliberating. This court, however, has said in reference to this section in State v. Young, 134 Iowa 505, l. c. 520:

"The language is not mandatory, and therefore the court, in the absence of a request, does not err in omitting to send the papers (Exhibits) out with the jury."

See, also, Hraha v. Coal Co., 154 Iowa 710.

Generally speaking, whether exhibits shall go with the jury to the jury room is a matter within the sound discretion of the trial court. Under some circumstances, it is proper that the exhibits should be examined by the jury. The question before us is whether liquids in containers, which liquids the State claims to be intoxicating liquor, should be sent with the jury, one of the questions being whether the liquids were in fact intoxicating.

In State v. Ling, 198 Iowa 598, the defendant was charged by indictment with the crime of bootlegging. Upon the trial, certain bottles containing liquor claimed by the State to be intoxicating, and to have been found in the possession of the defendant in his automobile, were introduced in evidence. Error is assigned on the refusal of the court to allow appellant to call members of the jury and examine them in support of his motion for a new trial, on his offer to show by them that certain of the bottles of liquor so found and introduced in evidence were taken to the jury room by the sheriff, without authority and without the knowledge of the defendant, and that members of the jury examined the liquor by the sense of smell and stated that it was alcohol. This court said:

"* * * it was at least within the discretion of the court to allow them (bottles) to be taken by the jury to the jury room."

The court continues upon a discussion of the foregoing assigned error to hold, in substance, that it was proper for the

jurors to examine the liquids to ascertain by the sense of smell whether they were in fact intoxicating.

In State v. Elmers, 198 Iowa 1041, the defendant was charged with the crime of maintaining a liquor nuisance. This court said:

"The two jugs that it was claimed were found on the premises, with their contents, were introduced in evidence, and were taken to the jury room. It appears that one of the jurors smelled of the contents, and another tasted them. There is no claim that any of the jurors drank the liquor, or did more than smell and taste it. This was not prejudicial."

Should the jury be permitted to either smell or taste or otherwise endeavor to personally determine whether liquor, which has been introduced in evidence, is in fact intoxicating? Upon what principle can such conduct be justified? Suppose that before the trial of a case a number of experts had been engaged by either side to sample, examine and determine whether the liquor was intoxicating, and these witnesses were produced by either side at the trial, one class of witnesses claiming the liquor to be intoxicating and the other class of witnesses claiming it was not intoxicating. Why should the jury be permitted to make witnesses of themselves and in the absence of the defendant, give evidence, each to the others, not subject to cross-examination, as to what, in their opinion, was the character of the liquor? This question has been well considered and clearly discussed in the case of People v. Elias, 147 N. E., 472 (Ill.). The court said:

"To permit the jury to sample intoxicating liquor for the first time while they are considering their verdict is to permit them to receive evidence after the cause has been submitted to them for decision, and amounts to a denial to the accused of the right to appear and defend against such evidence and to be represented by counsel. It is very important for the accused and his counsel to be able to perceive exactly what impression is being made upon the jury by any portion of the evidence given on his trial. It is probably unnecessary to say that it would be improper for the jury to determine the intoxicating effect of liquor by sampling it in the courtroom in the presence of the accused and under the supervision of the judge, but it would be all the

more objectionable to permit the sampling to be done in the jury room after the case had been placed in the hands of the jury. We can think of no useful purpose to be served by permitting intoxicating liquors to be taken by the jury on their retirement, and it is apparent that the defendant's rights may be prejudiced by permitting it to be done."

Manifestly, a witness who had not properly qualified as an expert would not be permitted to give his opinion in evidence as to whether the liquor in question was intoxicating or not. Why should an unqualified juror be permitted to give his evidence to the other jurors on the subject, or why should he be permitted to try to make up his own mind on the subject when he has not shown himself to have had any experience in the matter or in any sense to be an expert on the question?

Under the circumstances of this case, the court might very properly have exercised its discretion and not sent these exhibits to the jury room.

The smelling, tasting and drinking of the exhibits by the jury in this case, as disclosed by the record, constituted prejudicial misconduct. In so far as this holding may be in conflict with State v. Ling, 198 Iowa 598, and State v. Elmers, 198 Iowa 1041, the same should be overruled. I would reverse.

Justices ALBERT and WAGNER concur in this dissent.