STATE OF IOWA, Appellee, v. ARCHIE HENDERSON, Appellant.

No. 41139.

JUNE 24, 1932.

REHEARING. DENIED NOVEMBER 16, 1932.


John Fletcher, Attorney-general, and Neill Garrett, Assistant Attorney-general, for appellee.

G. C. Dalton, for appellant.

ALBERT, J.—This case was originally submitted at the September, 1931, term of this court, and an opinion filed therein on December 16, 1931, which opinion appears in 239 N. W. 588. Later, in March, 1932, an order was entered in this court withdrawing said opinion and setting aside the submission, ordering the case resubmitted, and reserving to either party the question of the jurisdiction of this court to reconsider said cause. Following this, the State amended its abstract by striking out and substituting in place thereof an indictment charging larceny from a building in the nighttime.

The first complaint made is a charge that the district court had changed the record while the case was in this court, and in so doing it had no jurisdiction. The record as it now stands in this court does not contain anything showing that the lower court in any way disturbed or changed the record at any time; hence we give no further attention to this proposition.

A motion was filed by the defendant to strike the amendment to the abstract which was filed by the State, and reliance is placed upon our decisions which hold that, after a rehearing is granted in a case, the abstract cannot be amended. This doctrine has no application to the status of the present case. There was no rehearing granted, but the court withdrew the opinion and ordered the case resubmitted. Under such circumstances, the case stands as though it had never been submitted and either party had a right to amend its abstract in any particular necessary to a fair presentation of the case.

It is argued that, after the opinion was filed in December,

and 60 days had expired for the filing of a petition for rehearing, this court had no jurisdiction to make the order above referred to. To this contention we cannot accede. The bar and the courts of this state have uniformly referred to the order which goes from this court to the district court to proceed with the trial of a cause as a "procedendo," and we have recognized this term in the rules of this court, although the word appears at no place in the Code of Iowa. There can be no question that the jurisdiction of this court continues until it is divested by the sending of a procedendo to the lower court. There is one exception to this rule, and that is where the case is re-docketed in the lower court, of which all parties have notice, and the proceedings are then continued in the lower court. Under such circumstances, we have held that by appearance the parties consent to the jurisdiction of the lower court and thereby waive the filing of a procedendo. This rule was first announced in State v. Knouse, 33 Iowa 365. See also Becker v. Becker, 50 Iowa 139; Hogle v. Smith, 136 Iowa 32.

The defendant raises his contention in this respect largely on State v. Banning, 205 Iowa 826. It is therein said that:

"* * * for ordinary purposes, the jurisdiction of this court ends with its decision and the expiration of time allowed for the petition for rehearing, and that the lower court thereupon resumes jurisdiction to proceed with the cause, even though no procedendo has been sent down, or copy of the opinion transmitted. Though the defendant is entitled by the statute to have them, he is not entitled to assert that, merely because of their absence, jurisdiction still remains in this court, and has not been transmitted to the trial court."

It will be noticed that in the Banning case, the lower court had resumed jurisdiction, and therefore it comes within the rule announced in the Knouse case, supra, and subsequent cases. Further than this, nothing could be claimed for the Banning case if it were even stronger in its statement than it is, because what was there said was purely dictum, the fact statement showing that procedendo had gone down and was filed in the lower court at the time the question was there raised. We hold, therefore, that this court had not lost jurisdiction of the case, and had power to enter the order which we did at the time it was entered.

It is next urged that there is a variance between the plead-

ings and the proof, and also that the indictment is defective in its allegations of ownership of the property. The evidence in the case shows that this property was owned by Grace McCaustland and was used in connection with a garage known as the "McCaustland Garage," and C. W. McCaustland, her husband, was the manager and in control thereof.

Under these facts it is insisted that there is a variance between the indictment and the proof. The gist of the crime under a charge of larceny from a building in the nighttime is the taking of property from a building in the nighttime. The ownership of such property is not a controlling factor in the crime. We said in State v. Stanley, 48 Iowa 221, where the indictment charged the defendant with stealing two horses, the property of W. W. Westbrook, of the value of $200 each, that "it [was] * * * objected there was no evidence showing that the horses were the property of Westbrook. There was, however, evidence showing that the horses were in the possession of Westbrook, and being so, they were stolen. This is sufficient."

As heretofore explained, the title to the property in the instant case was in Grace McCaustland, and C. W. McCaustland was the manager in charge of and running the business. We think, under the Stanley case, this is sufficient, and does not raise a variance such as is material. Further than this, the very question here discussed is covered by Section 13732-c11 of the Code of 1931.

It is next argued that Chapter 266 of the Acts of the 43d G. A., now appearing as Chapter 638, Code 1931, is unconstitutional because it does not fully apprise the defendant of the offense of which he is attempted to be charged. This objection, of course, is untenable because Section 13732-c4 of the present Code specifically provides that if the same fails to inform the defendant of the offense sufficiently to enable him to prepare his defense, or to give him such information as he is entitled to under the constitution of this state, the court may, of its own motion, and shall, at the request of the defendant, order the county attorney to furnish a bill of particulars containing such information as may be necessary for these purposes, or the county attorney may of his own motion furnish such bill of particulars.

The defendant was therefore fully protected in this respect, and the law is not subject to the criticism that the same is a violation of the Constitution.

It is further claimed that the law is unconstitutional be-

cause the matters connected with the so-called "short form of an indictment" are not expressed in the title to the act. Turning to the title of the act, however, we find it to be entitled "An act to amend, revise and codify Sections thirteen thousand seven hundred thirty-three" (and 15 other sections) of the Code of 1927, "relating to form, contents and sufficiency of indictments, and to provide for a bill of particulars in aid of indictments." Probably one half of the law in the Code at the present time was enacted with a title exactly like the title to said Chapter 266. The repeated holdings of this court have been that such title is sufficient to cover a situation such as we have in the present case.

Complaint is made of Instruction 4, dealing with the question of reasonable doubt, and it is complained that the latter part of said instruction prevents the jury from a consideration of a doubt arising from lack of evidence. This contention has no merit, because the first part of it specifically states that a doubt, to be reasonable, must be one that arises from a consideration of all of the evidence in the case, or from the lack of evidence upon some material point in the case. This is sufficient to comply with our requirements in instructions of this kind.

Complaint is also made against Instruction 5 because it is said it authorizes the jury to convict the defendant even though the property complained to have been stolen did not belong to the party whose ownership is alleged. What we have heretofore said with relation to the question of ownership of the property controls here, and the objection to the instruction is therefore not well founded.

Instruction No. 7 is also assailed, and this deals with the question of intent involved in the case. The complaint is that the latter part of the instruction says that every person is in law presumed to intend the natural and ordinary consequences and results of his own acts. We think the assault on this instruction is a strained construction thereof, and the instruction as a whole was correct.

Certain instructions were requested by the defendant and refused. So far as they were material, they were covered by the instructions given by the court, and we see no error in their refusal.

There seems to have been no exception taken to any of the instructions upon any of the grounds complained of in this court except those to which we have above made reference. The instruc-

tions, read as a whole, we think fairly submitted the case to the jury.

Defendant insists that, under the evidence, no larceny whatever was committed. This contention comes from his theory of the case that he had permission from C. W. McCaustland to take the acetylene torch and attachments, and, therefore, there was no larceny. There are certain facts in the case, however, which dispute this theory of the defendant's. Further than this, C. W. McCaustland testified, in terms, that he never gave the defendant permission to take the torch and attachments. A question was thereby raised for the jury.

It is insisted that the evidence is not sufficient to carry the case to the jury. There was evidence before the court from which the jury might conclude substantially the following facts:

The defendant was an employee of the Rock Island Railway Company's in charge of the coaling station of said railway in the city of Atlantic, and in connection therewith used certain carrier buckets, one or more of which was out of repair, and it was necessary to use heat in connection with the repairing of the same. At the time in question, C. W. McCaustland operated a garage at 504 Walnut street in said city. This was known as the McCaustland Garage, of which he was general manager and in full charge, although the same was owned by his wife, Grace McCaustland. The same was not a corporation. As a part of said garage contents, there was an acetylene welding torch outfit, worth from $120 to $140. The defendant called at the garage on Saturday, the day before the occurrences which are the basis of this prosecution, and inquired about this welding torch and as to what it would do. He waited to see the manager, McCaustland, but did not succeed in talking with him. About 4 o'clock in the morning on December 15, 1930, the night policeman of said city noticed the defendant in his automobile near this garage. The officer drove around to another point and went by foot to the place where he found defendant's car, which was in the rear of the McCaustland Garage. When he arrived, he saw the defendant loading the acetylene torch outfit into his car. The officer examined the door of the garage, which consisted of two doors fastened together in the center on the inside. He noticed that the glass had been knocked out of one of the doors and was lying outside of the building. The officer inquired of the defendant what he was doing, and he replied that McCaustland told him he could

282

have the torch, and the door of the garage had not been locked, and McCaustland had left the door open for him. There is other evidence in the case to show that the door was locked at the time. The officer doubted the statements of the defendant, and they went to the McCaustland house to see about it. They were unable to arouse McCaustland, and went back to the city hall, and the officer decided to let the defendant go. Defendant told the officer that he wanted this torch to fix something in the coal chute. Later, defendant was arrested in possession of the welding torch. He insisted that McCaustland had given him permission to use the torch, which permission he claims to have obtained from McCaustland by telephone; but McCaustland denies ever giving such permission.

The evidence shows also that the garage was locked on the night before and the torch was in the garage at the time it was locked up the previous evening.

Briefly outlined, these are the leading features of the testimony in the case made by the State.

After having reviewed the whole record, we think there was sufficient evidence to take the case to the jury.—Affirmed.

WAGNER, C. J., and EVANS, STEVENS, FAVILLE, and DE GRAFF, JJ., concur.