STATE OF IOWA, Appellee, v. JOHN BADING, Appellant.

No. 46545.

MARCH 6, 1945.

REHEARING DENIED JUNE 22, 1945.

George C. Claassen, of Cedar Rapids, for appellant.

John M. Rankin, Attorney General, and Wm. F. McFarlin, Assistant Attorney General, and Carl Hendrickson and Dave Elderkin, both of Cedar Rapids, for appellee.

HALE, C. J.—The defendant, John Bading, is a farmer living in the northern part of Linn county, owning and operating a farm upon which he kept a large amount of stock consisting of hogs and cattle. These were mainly purchased from other parties and fed on his farm. There were three separate sales of the hogs which it is claimed by the State were received by him unlawfully under the provisions of section 13042, Code of Iowa, 1939. William Preston, from whom Bading purchased some of the hogs, is about thirty years old and had been a resident of Missouri up to 1943, when he came to Iowa and went to work for E. O. Fisher & Son. Fred Eyerly and Jess Eyerly were brothers, who had farmed to some extent, and lived in a locality known as Sodtown, about four miles west of the Bading farm. Jess had been a convict. The first sale took place on the night of June 17, 1943, when the two Eyerlys and Preston came to Bading's farm and awakened him and offered to sell him some pigs weighing about thirty to thirty-five pounds. After some deliberation they agreed on a price of $8 per head and the transaction appears to have been between Bading and Fred Eyerly. The hogs were delivered shortly after midnight. Upon June 22, 1943, another sale was made to Bading by Jess Eyerly of some small pigs which Jess claimed to own, for $8.40 apiece, and Bading paid for them by check for $70 and some cash. On June 30, 1943, the third purchase was made from Preston, who was accompanied by Jess Eyerly. Preston told Bading that he had twenty-five pigs of his own and would sell them for a good price. Bading purchased the pigs for $105. It is not shown by the State that the prices paid varied much from the ordinary current price of such stock in that neighborhood, but there was evidence that the pigs were delivered during the night and from an ordinary pleasure car. A part of the testimony of the three thieves is that they fully apprised Bading prior to the sales that they would have some pigs for sale—but they would be stolen and they would bring them to the Bading farm. The farm from which the hogs were stolen was known as the Butler farm, belonging to the heirs of the C. F. Butler estate, and was operated by E. O. Fisher & Son. Defendant was indicted for the purchase from Preston and a verdict of guilty rendered and sentence given thereunder. We have only outlined the general charge and

facts relating to the alleged crime. The evidence of the State was sufficient to authorize submission to the jury.

The errors assigned by appellant attack the indictment and allege passion and prejudice of the jury, improper and prejudicial conduct of the county attorney, errors in instructions, the rejection of evidence, and admission of incompetent evidence offered by the State.

I.  A large part of appellant's argument is devoted to assailing the indictment and alleges variance between the allegations in the indictment and the proof.  The errors assigned under this division are: That there was a fatal variance between the charge in the indictment that the pigs were either owned by a farm or by the C. F. Butler estate and the proof produced showing that the pigs belonged to E. O. Fisher & Son; that the pigs could not be stolen either from a farm or from the C. F. Butler estate because neither is an entity which is capable of owning property, and that one of the essential elements of proof in a criminal charge of receiving stolen property is that it must be shown that the property was in fact stolen from the owner named in the charge and that it was stolen from an entity which can own property.  The brief points in support of these claimed errors are (1) that the ownership element must be alleged and (2) that a motion in arrest of judgment must be granted for any cause which has been ground for demurrer.

The criticism of the indictment in argument emphasizes the necessity of care in the formulation and presentation of criminal charges.  While our modern short-form statute as to indictments is a decided improvement and in the interest of justice, and has done away with the old system of rules which sometimes permitted the escape of criminals through mere technicalities, yet the essential elements of criminal pleading have not been abandoned and are still retained in the present statute.  But we do not think that the indictment here fails to charge sufficiently the essential elements of the crime.

We have noted the assignments of error by appellant. In the motion for directed verdict there was a charge of variance and in the motion in arrest of judgment it was alleged the indictment was defective.  But a motion in arrest of judgment must be granted upon the whole record only in the event the court

finds no legal judgment can be pronounced. Section 13946, Code of Iowa, 1939. We think, therefore, that the variance cannot properly be raised by a motion in arrest of judgment. For the purposes of such motion the evidence is not a part of the record. State v. Young, 153 Iowa 4, 6, 132 N. W. 813, 815, Ann. Cas. 1913E, 70, and cases cited.

There are other reasons which we think controlling.

The principal object in an indictment is to apprise defendant of the crime charged. We are satisfied that appellant here could have had no doubt from the allegations of the indictment just what it was he was to answer for in court, and feel certain that the able attorney who represented him was in no way misled by such allegations.

The record does not disclose that any objection was made before plea, and we have held that the sufficiency of the specifications in an indictment must be raised before the jury is sworn and is not open to question upon objections to evidence, exceptions to instructions, or motion in arrest of judgment. See State v. Phillips, 212 Iowa 1332, 236 N. W. 104, and cases cited therein.

Motion in arrest of judgment is defined in section 13946 as an application to the court that no judgment be rendered on a verdict against defendant or on a plea of guilty thereto and shall be granted when upon the whole record no legal judgment can be pronounced. It formerly contained the provision that the motion might be filed upon any ground which would have been a ground of demurrer. Section 5426, Code of 1897. But by amendment and change this provision has disappeared from the statute:

"So that now, practically, the courts hold that the motion cannot be sustained upon the grounds which would be grounds for demurrer." State v. Kirkpatrick, 220 Iowa 974, 976, 263 N. W. 52, 53, citing State v. Frey, 206 Iowa 981, 221 N. W. 445.

Code section 13790 provides that defendant may demur to the indictment when it appears upon its face either that it does not substantially conform to the requirements of the Code or that the indictment contains matter which, if true, would constitute a legal defense or bar to the prosecution.

And in section 13791 of the Code, it is said:

"All objections to the indictment relating to matters of substance and form which might be raised by demurrer shall be deemed waived if not so raised by the defendant before the jury is sworn on the trial of the case."

We must hold that the objection to the indictment was not made in time.

■ But even if so made, we are not convinced that the indictment is erroneous. Section 13732.02 prescribes what the contents of the indictment shall be and provides the offense may be charged in one or more of the following ways:

"1. By using the name given to the offense by statute.

"2. By stating so much of the definition of the offense, either in terms of the common law or of the statute defining the offense, or in terms of substantially the same meaning, as is sufficient to give the court and the accused notice of what offense is intended to be charged.

"The indictment may refer to a section or subsection of any statute creating the crime charged therein, and in determining the validity or sufficiency of such indictment regard shall be had to such reference."

There is a reference in the indictment to "(13,042)" but it is not stated as a section of the Code.

Section 13732.11 is in regard to ownership, and states:

"1. An indictment need contain no allegation of the ownership of any property, unless such allegation is necessary to charge the offense under section 13732.02.

"2. An allegation in an indictment or bill of particulars of ownership of property is supported by proof of possession or right of possession of such property, and any statement in an indictment or bill of particulars which implies possession or right of possession is a sufficient allegation of ownership."

While a form of indictment is given under section 13732.33 which sets out ownership, yet these forms are noted only as permissible forms and *may* be used in cases where they are applicable. See State v. Henderson, 215 Iowa 276, 243 N. W. 289,

and cases cited; State v. Stanley, 48 Iowa 221; State v. Archibald, 208 Iowa 1139, 226 N. W. 186; State v. Moe, 195 Iowa 270, 191 N. W. 858. The reason for alleging ownership in the indictment is to negative ownership in the accused. State v. Congrove, 109 Iowa 66, 80 N. W. 227; State v. Philpott, 222 Iowa 1334, 1341, 271 N. W. 617, 621. In the latter case, after stating that the Code provided that an allegation of ownership in an indictment is supported by right of possession, and citing authorities, the court says:

"The defendant urges that the indictment did not identify the Grove Township School District as a copartnership or corporation and did not correctly describe the corporation which was the Grove School District Township. Defendant could not possibly have been misled or prejudiced by this variance in names and it was not material to defendant whether the district was a copartnership or corporation. State v. Fogerty, 105 Iowa 32, 74 N. W. 754; State v. Congrove, supra."

The indictment herein charges the hogs belonged to a farm operated by E. O. Fisher for the C. F. Butler estate. We think it sufficiently charges the possession of Fisher, which the evidence shows to be a fact, and the other words are merely descriptive and in no way necessary to the charge. Nor was it material that the evidence indicated that the son of E. O. Fisher might have had some interest in the hogs. The appellant, as in the Philpott case, was in no way prejudiced.

Appellant argues that a motion in arrest of judgment is a proper method of reaching the faults in a defective indictment, and that it is still the practice under the short-indictment act and Code section 13732.02, citing State v. Ford, 222 Iowa 655, 269 N. W. 926. But this appeal from the municipal court in the Ford case admittedly does not definitely indicate when first the objections to the information were raised. It was really no information, lacking signature, verification, or any essential element of such a charge. The case does not support appellant's theory.

We have examined the various authorities cited by appellant and we think none of them supports his argument. If

there had been proper objections to the indictment available to appellant, either by motion to set aside or by demurrer, he did not attempt to avail himself of these remedies and is now in no position to complain. Section 13791, Code of Iowa, 1939; State v. Phillips, supra, 212 Iowa 1332, 236 N. W. 104; State v. Costello, 200 Iowa 313, 202 N. W. 212, and cases cited; State v. Ostby, 203 Iowa 333, 210 N. W. 934, 212 N. W. 550; State v. Gregory, 198 Iowa 316, 198 N. W. 58.

II. Appellant in Division II of his motion in arrest of judgment challenges the validity of the indictment for the reason that it was not endorsed by the clerk of the court as prescribed by statute and that there was no record of filing. The same answer may be made to this objection as to the objection to the substance of the indictment noted above, that appellant's objection was filed too late. Section 13729 of the Code states that an indictment must be marked "filed" by the clerk. But we have held that the provisions of the Code with reference to the presentment of indictments to the court are directory only and that the indictment will not be invalid if lacking in some of these particulars. State v. Axt, 6 (Clarke) Iowa 511; State v. Rivers, 58 Iowa 102, 12 N. W. 117, 43 Am. Rep. 112; State v. Voss, 201 Iowa 16, 206 N. W. 292; and State v. Doss, 110 Iowa 713, 80 N. W. 1069, and cases cited.

The Code provides for such a contingency as we have here. Under section 13781 one of the grounds for setting aside an indictment is when it has not been presented and marked "filed" as prescribed by the Code. No motion to set aside the indictment having been made prior to entering a plea, the question cannot later be raised. As a matter of fact, it is shown that the indictment was duly filed. See State v. Voss, supra.

III. Appellant in his motion for new trial, which was overruled by the court, alleged misconduct of members of the jury. It appears that after the jury had been deliberating for some time they were divided, eight being for conviction and four for acquittal, and that the arguments among the jurors became somewhat heated and one juror charged the four who were for acquittal with having been bought off. Affidavits of the four jurors state that this charge created hostilities and resentments

and prevented a fair and calm and proper consideration of the issues, resulting in insults to said jurors and an intimidation of others. It does not appear that this accusation by the juror resulted in an immediate verdict, as the last ballot was taken about noon on Thanksgiving Day after about twenty hours' deliberation. The four jurors graciously yielded but alleged in their affidavits that they had an honest doubt. The juror making the accusation also stated that the attorney for appellant had addressed himself to these minority jurors. It does not appear that the juror made the accusations as a matter of fact, since she qualified her statement by saying that appellant's attorney "must have bribed" them. The whole accusation was at most a somewhat heated expression of opinion. The language of the juror, though not to be approved, is such as sometimes occurs in argument among jurors and we cannot draw the conclusion that the four men were so intimidated or influenced by the unwise statement of their colleague that they yielded against their honest convictions. Whatever influenced them inheres in the verdict and we cannot set aside a verdict merely because some members of the jury, in the course of an argument, through anger or excitement, gave utterance to expressions of opinion as to the motives animating their colleagues. We have ruled that when a juror states what are claimed to be facts affecting the verdict it may be sufficient misconduct to vitiate such verdict, but we fail to see how in this case the decision was affected in any manner by what took place during the argument among the jurors. See State v. Werling, 234 Iowa 1109, 1113, 13 N. W. 2d 318, 320, and cases cited, including State v. Siegel, 221 Iowa 429, 432, 264 N. W. 613. The latter case concerns a remark as to bribery, and it is held that affidavits of jurors that their verdict was or was not affected by what happened in the jury room concern matters which inhere in the verdict and are therefore not to be considered. We are satisfied that the alleged misconduct was not such as would warrant any action on our part granting a new trial or setting aside the verdict.

IV. The next complaint of appellant is the alleged error of the court in permitting cross-examination of appellant's character witness as to reports and rumors heard by the witness.

The general rule, as found in the editorial notes in 71 A. L. R. 1505, is:

"According to the overwhelming weight of authority, a witness testifying to the good reputation or character of a defendant in a criminal prosecution may be interrogated on cross-examination with respect to rumors or reports of particular acts imputed to the defendant, and as to what the witness has heard of specific charges of misconduct made against the defendant."

See, also, 20 Am. Jur. 306; 70 C. J. 642, and cases cited; State v. Keul, 233 Iowa 852, 5 N. W. 2d 849, and cases cited.

Appellant urges that it was misconduct on the part of the county attorney on cross-examination of character witnesses to ask questions as to specific acts of misconduct, and error for the court to overrule appellant's objections thereto. The cross-examination objected to and set out in appellant's argument was that of the witnesses Stirm, McDonald, and Sisler. With the exception of two questions as to knowledge of the witness, which were immediately withdrawn, the cross-examination was within our rules covering cross-examination of character witnesses. There was no error in propounding the questions.

V. The appellant complains of the latitude allowed the county attorney in cross-examination of the appellant as prejudicial and in not confining such cross-examination within the limits provided in Code section 13892. Appellant had previously made an affidavit and statement to the officers relating to the time of night when the pigs were delivered. The cross-examination of which appellant complains is set out in his argument, covering pages 83 to 100, and it is obviously impracticable to set it out in full. The county attorney's cross-examination related largely to variances between former statements of appellant and his testimony on the trial, but a careful examination fails to disclose any examination as to matters not testified to in the examination in chief, or any undue persistence of the county attorney or prejudicial misconduct. Appellant was subjected to a cross-examination as any other witness on matters testified to by him. Section 13892, Code, 1939.

VI. Appellant alleges misconduct of the county attorney in referring to the wealth of appellant. The record does not

show the argument nor what reference was made to the means of Bading. But the testimony of Bading and his son refers to the fact that he owned and operated a farm of four hundred acres and had quantities of livestock. The county attorney in his argument had a right to refer to the evidence, and even to make inferences therefrom, but from the record we have no knowledge of what they were, or whether in any instance they went beyond legitimate argument. The general rule, supported by authorities, is announced in 64 C. J. 279, section 297:

" * * * a mere reference to the economic situation of the parties, when it has been shown by the evidence, is not improper, and it is within the fair province of argument to refer to the standing and wealth of a party when such reference is pertinent to a plausible argument competent in the cause, and is not in any way made an issue before the jury."

It seems to us that, so far as inferences are concerned, they would be fully as favorable to appellant, if not more so, as they would be to the prosecution. Authorities cited by appellant consist of flagrant violations of the rules of argument and do not support his contention.

VII. In addition to other witnesses who testified to the previous good character of appellant, counsel offered Rufus Sisler. His answer to one question was struck out by the court. But the witness had previously testified fully as to appellant's good character, and the ruling of the court, if erroneous, was not so prejudicial as to constitute reversible error. And the same may be said as to the testimony of the witness Stirm. There were various other witnesses who testified as to the general moral character of Bading, and we think the refusal of the court to admit this testimony was not so prejudicial as to require reversal.

VIII. Objection is made as to the offer of Exhibit 4, the testimony of the witness before the grand jury, by the county attorney on redirect-examination. Afterward, in the absence of the jury, the exhibit was withdrawn. We see no misconduct here.

IX. Objection is made to the court's sustaining of

objections to the testimony of appellant's two sons. This consisted of statements alleged to have been made by appellant on the morning after the pigs were purchased as to the party from whom the pigs were bought and the price paid. The ruling was clearly right.

X. Divisions XI and XII of appellant's argument are objections to the giving of certain instructions. Instruction No. 5 referred to the indictment and appellant makes the same objection that he did to the form of the indictment, which we have already discussed. The objection to Instructions Nos. 4 and 8 is that they failed to inform the jury of appellant's defense of purchasing in good faith by using throughout the word "receiving" and not using the words "purchasing" or "buying." The word "receiving" was used in the indictment, and identified the transactions in which appellant was claimed to be involved as fully as if the other words were added. It was correct, and there was no request that it be amplified. The instruction being correct, if appellant desired a further and detailed instruction he should have so requested. This rule as to request has so often been approved that it is hardly necessary to cite authority. But see State v. Harrington, 220 Iowa 1116, 1121, 264 N. W. 24, and cases cited.

We have examined the brief and arguments of counsel with care. The alleged errors are argued at length, some three hundred authorities having been cited in both briefs, which authorities, of course, it is impossible to analyze or review herein; but, after a consideration of the alleged errors and the arguments thereon, we must conclude that there was no such error as to prejudice the rights of appellant or to deprive him of a fair trial, and the cause is therefore affirmed.—Affirmed.

All JUSTICES concur.